**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION -- LEXINGTON**

| | |
|---|---|
| **WASTE SERVICES OF THE BLUEGRASS, LLC and WASTE SERVICES REALTY, LLC,** | **CIVIL ACTION NO. 5:20-410-KKC** |
| **Plaintiffs,** | |
| **V.** | **OPINION AND ORDER** |
| **CITY OF GEORGETOWN, KENTUCKY**; **TOM PRATHER,** *individually and in his official capacity as Mayor*; **SCOTT COUNTY, KENTUCKY FISCAL COURT**; **JOE PAT COVINGTON,** *individually and in his official capacity as Scott County Judge/Executive*; **GEORGETOWN-SCOTT COUNTY PLANNING COMMISSION**; **JOE KANE**, *individually and in his official capacity as Director of the Georgetown-Scott County Planning Commission*; **COMMONWEALTH OF KENTUCKY, ENERGY AND ENVIRONMENT CABINET;** and **JOHN DOES 1-25.** | |
| **Defendants.** | |

\*\*\*\*\*\*\*\*\*

This matter is before the Court on the motions to dismiss [DE 18, 20] filed by the defendants and the motion for preliminary injunction [DE 3] filed by the plaintiffs.

**I.   Facts**

The plaintiffs (together, "Waste Services") own a landfill and adjoining property located in Scott County. They allege that the defendants have taken actions that have reduced the value of the landfill and the adjoining property to almost nothing. [DE 1, Complaint, ¶ 1, 2, 111.]

There are three groups of defendants. Members of the first group are associated with Scott County, where the landfill and adjoining property are located. [DE 1, Complaint, ¶ 1, 17.] These defendants consist of the Scott County Fiscal Court and Joe Pat Covington, who is the Scott County Judge/Executive (together, the "County Defendants").

Members of the second group of defendants are associated with the city of Georgetown, Kentucky, which is located in Scott County. These defendants consist of the city itself and Tom Prather, the Georgetown mayor (together, the "City Defendants"). It is undisputed that neither the landfill nor the adjoining property is located in the city of Georgetown, but the city is involved in this action because it owned the landfill and sold it to Waste Services. [DE 1, Complaint, ¶ 18, 19.]

The third group of defendants are associated with the Georgetown-Scott County Planning Commission. These defendants consist of the planning commission and Joe Kane, the director of the planning commission (together, "the Planning Commission Defendants"). The planning commission is relevant to this action because it is "the local zoning authority having jurisdiction over matters of land use planning and zoning in and about Scott County…." [DE 1, Complaint, ¶ 11.]

### A. County's Cooperation with Landfill Expansion

In February 1999, Scott County voted to amend its Solid Waste Management Plan ("SWMP") to increase solid waste capacity at the landfill from 3.67 million tons to 9.67 million tons. [DE 1, Complaint, ¶ 33.] The county is required to submit to the Kentucky Energy and Environment Cabinet (the "Cabinet") a solid waste management plan for the area over which it has jurisdiction. It is required to update the plan every five years. Any amendments to the plan must be submitted to the cabinet for approval. KRS 224.43-340(2).

A few months after the county amended the plan to expand the landfill's capacity, in April 1999, a company called Waste Services of the Bluegrass, Inc. bought the landfill from the city of Georgetown. [DE 1, Complaint, ¶ 2; DE 2, Response at 15.] Plaintiff Waste Services of the Bluegrass, *LLC* ("Waste Services") asserts that it the successor in interest to Waste Services of the Bluegrass, *Inc.* [DE 1, Complaint, ¶ 5; DE 21, Response at 15.] Waste Services asserts that its predecessor paid millions of dollars for the landfill with "the expectation and understanding" that it would be expanded, [DE 1, Complaint, ¶ 2.]

According to Waste Services, for the first 18 years that it owned the landfill, the county was on the same page, and both parties worked together toward the landfill's expansion. [DE 1, Complaint, ¶ 50.] In 2010, Waste Services bought the 500-acre tract adjoining the property upon which the landfill is located. [DE 1, Complaint, ¶ 35; DE 3, Mem. at 6.] Every SWMP that the county approved from 1991 to 2019 included the landfill's expanded capacity of 9.67 million tons. [DE 1, Complaint, ¶ 33.] The most recent SWMP that included the expanded capacity covered the years from 2018 to 2022 and was approved by the county on September 29, 2017. [DE 3, Mem. at 10.]

In 2012, Waste Services began efforts to obtain a permit from the state that would permit it to horizontally expand its operations to include the newly acquired 500-acre tract. [DE 1, Complaint ¶ 36; DE 3, Mem. at 6.] As part of the application for the permit, Waste Services was required to obtain two approvals from local authorities that are important to this action.

First, it was required to obtain a determination that the proposed expansion was consistent with Scott County's SWMP. [DE 1, Complaint, ¶ 36.] On May 11, 2012, the Scott

3

County Fiscal Court provided the consistency determination (the "Consistency Determination"). [DE 1, Complaint, ¶ 36-37.]

Second, Waste Services was required to obtain a certification from the "local zoning authority" that the expansion complied with local zoning laws. [DE 1, Complaint, ¶ 39.] In 2013, the then-Director of the planning commission, Earl Smith, provided a letter certifying that the proposed expansion complied with local zoning ordinances (the "Zoning Certification"). [DE 1, Complaint, ¶¶ 40-42; DE1-5, Smith Aff.; DE 20-2, Smith Cert.]

On December 20, 2016, the Cabinet issued a draft permit to Waste Services approving the horizontal expansion of the landfill. [DE 1, Complaint, ¶ 56.] The Cabinet also issued a public notice soliciting comments on the application and draft permit. [DE 1, Complaint, ¶ 56.]

### B.  County reverses course

According to Waste Services, this is when an "outspoken sect of the community" began to voice opposition to the expansion. [DE 1, Complaint, ¶ 57.] Waste Services complains of two critical actions that certain of the defendants took in response to the public outcry. Waste Services argues that these acts caused the Cabinet to ultimately reject Waste Service's permit application [DE 1, Complaint, ¶¶  66, 95-100; DE 25, Mem. at 16.]

### 1)  Kane's Revocation of Smith's Zoning Certification

First, by letter dated January 18, 2017, defendant Jack Kane, who became director of the Georgetown-Scott County Planning Commission after Smith, issued a letter that revoked Smith's 2013 Zoning Certification. [DE 1, Complaint, ¶¶ 57,  62; DE 1-12, Kane Letter.] In the letter, Kane stated that, as a local governmental entity, the city of Georgetown was exempt from complying with the county zoning ordinance. As a private entity, however,

Waste Services was not exempt. He asserted that Waste Services was permitted to continue to operate the landfill as a "legal nonconforming use" only because that was how the landfill was operated at the time Waste Services purchased it. In Kane's view, however, the 500-acre tract that Waste Services had more recently acquired was subject to the zoning ordinance. This was because Waste Services did not purchase this tract from the city, nor was this tract previously approved for a landfill. Kane explained that any portion of the 500-acre tract that would be used for the landfill operation would have to be rezoned from agricultural to industrial. [DE 1, Complaint, ¶ 63; DE 1-12, Kane Letter.]

Waste Services appealed this revocation of the Zoning Certification to the Scott County Board of Adjustments ("SCBOA"). [DE 1, Complaint, ¶ 67.] On March 14, 2017, the SCBOA conducted a hearing and upheld Kane's determination. [DE 1, Complaint, ¶ 67-69; DE 20-3, February 9, 2017 Admin. Appeal.] Waste Services appealed the SCBOA's ruling to the Scott Circuit Court. [DE 20-4, Complaint.] On July 13, 2018, the Scott Circuit Court granted summary judgment to the county. [DE 20-5, Opinion.] Waste Services then appealed the Scott Circuit Court's ruling to the Kentucky Court of Appeals, and that appeal remains pending. [DE 20-1, Mem. at 4; DE 20-7 at 5, n.1; DE 18-2, Mem. at 1; DE 18-7, Notice; DE 18-9 Docket; DE 3, Mem. at 7; *Waste Services of the Bluegrass, LLC, et al. v. Scott Cty. Bd. of Adjustments*, 2018-CA-001225 (Ky. App.)]

Waste Services also took a different route to obtaining the required Zoning Certification. On December 1, 2017, it applied to the planning commission for an amendment to the Scott County zoning map to change a portion of the 500-acre expansion property from agricultural to industrial, which would render the expansion compliant with the zoning ordinance. [20-1, Mem. at 4, n.3; DE 20-6, Complaint.]

Waste Services has, thus far, had no luck with this approach either. The planning commission recommended that the Scott County Fiscal Court deny the application. [DE 20-6, Complaint, ¶ 19; DE 20-1, Mem. at 4 n.3.] The Scott County Fiscal Court affirmed the planning commission's recommendation. Waste Services appealed the fiscal court's decision to the Scott Circuit Court, and that appeals remains pending. [DE 20-6, Complaint; DE 20-1, Mem. at 4 n.3; *Waste Services Realty, LLC, et al. v. Scott County Fiscal Ct.*, Scott Circuit Ct., No. 18-CI-00187]

Faced with an expansion application with no Zoning Certification, on April 17, 2020, the Cabinet denied Waste Services' application. On May 14, 2020, Waste Services appealed that denial to the Franklin Circuit Court, where it remains pending. [DE 20-1, Mem. at 4; DE 20-7, Appeal; ¶ 43; DE 3, Mem. at 7, n.2; DE 18-2, Mem. at 2; *Waste Services of the Bluegrass, LLC v. Comm. of Kentucky Energy and Environment Cabinet, et al.* Franklin Circuit Court, Div. 1, Civil Action No. 20-CI-00332.]

### 2) Scott County's Amendment of the SWMP

Waste Services then took yet another approach to obtaining a permit from the Cabinet that would allow for expanded capacity. On June 1, 2020, it applied to the Cabinet for a modification to its existing permit that would allow it to expand the horizontal boundary of the landfill over the original landfill site, as opposed to utilizing the 500-acre expansion tract. [DE 1, Complaint, ¶ ¶ 86; DE 3, Mem. at 9.] The Cabinet advised Waste Services that it must first obtain a determination from the county that the modification was consistent with the Scott County SWMP. [DE 1, Complaint, ¶ ¶ 86.]

This leads to the second action by Scott County that, according to Waste Services, precluded it from obtaining a permit for expanded capacity at the landfill. Beginning in

March 2019, the county had been taking actions to amend the 2018-22 SWMP to reduce or eliminate capacity at the landfill. [DE 3, Mem. at 10.] On June 25, 2020, the Scott County Fiscal Court finally approved a resolution amending the 2018-22 SWMP to "zero out capacity for the disposal of waste within the solid waste area …." [DE 1, Complaint, ¶ ¶ 89-91.] The June 25, 2020 resolution also determined that the 2012 Consistency Determination was no longer applicable or binding on the fiscal court. [DE 1, Complaint, ¶ 91.] On August 10, 2020, the Scott County Fiscal Court adopted a resolution finding that Waste Services' proposed expansion was not consistent with the amended SWMP (the "Amended SWMP"). [DE 20-1, Mem. at 6; DE 20-8, Resolution.]

The Cabinet approved the Amended SWMP on August 12, 2020. [DE 1, Complaint, ¶ 92.] On September 11, 2020, Waste Services filed a petition for review with the Cabinet, alleging that its approval of the Amended SWMP was improper.   [DE 20, Mem. at 6; DE 20-10, Petition, *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet*, Energy and Env't Cabinet, Office of Admin. Hr'gs, No. DWM-20-1-0816.] That petition remains pending.

On September 14, 2020, the Cabinet returned Waste Services' application to modify the permit, explaining that, because of the Amended SWMP, the agency could not issue a permit authorizing additional capacity at the landfill. [DE 20-1, Mem. at 6; DE 20-11, Letter.] On October 14, 2020, Waste Services filed another petition for review with the Cabinet alleging that the agency had improperly refused to review its permit application. [DE 20-1, Mem. at 6; DE 20-12, Petition, *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet*, Energy and Env't Cabinet, Office of Admin. Hr'gs, No. DWM-20-1-0888.] That petition remains pending.

### C. Waste Services files this federal action

On October 1, 2020, Waste Services filed this action asserting multiple federal and state claims against the City, County, and Planning Commission Defendants. The complaint asserts 11 counts in all, including two claims for declaratory relief and one claim for injunctive relief.

As to the federal claims, Waste Services asserts four claims under 42 U.S.C. § 1983 against all these defendants (Counts I, II, III, XI). That statute grants individuals a private right of action against certain government actors for violation of the individual's federal constitutional rights.

Waste Services' first federal constitutional claim (Count I) asserts a violation of the Takings Clause of the Fifth Amendment, which provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.  Waste Services asserts that, with the above-described actions that reduced the value of the landfill to essentially nothing, the defendants unlawfully "took" the landfill and the adjoining expansion area from it without providing just compensation. [DE 1, Complaint, ¶¶ 101-13.]

For its second federal constitutional claim (Count II), Waste Services asserts that the way Planning Commission Director Kane changed the Zoning Certification and the way the County Defendants amended the SWMP violated Waste Service's rights to due process under the 14th Amendment. [DE 1, Complaint, ¶¶ 114-121.] The Due Process Clause prohibits the government from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Courts have determined that this clause "clothes individuals with the right to both substantive and procedural due process." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Waste Services does not specify whether it asserts a procedural or substantive due process claim. Nevertheless, the Court interprets the complaint to assert a procedural claim.

8

Substantive due process "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). "The list of fundamental rights and liberty interests—which includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment – however, is short, and the Supreme Court has expressed very little interest in expanding it." *Seal v. Morgan*, 229 F.3d 567, 574–75 (6th Cir. 2000) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

Waste Services does not assert that the county has deprived it of any such fundamental right. Instead, it asserts that the County and Planning Commission Defendants failed to abide by proper procedures in revoking the Zoning Certification and amending the SWMP. [DE 1, Complaint, ¶¶ 61, 64, 93, 117, 118.]

Waste Services' third federal constitutional claim (Count III) asserts that the defendants "knowingly maintain and permit official policies or customs [that permit] the occurrence of" constitutional violations. [DE 1, Complaint, ¶ 128.]

For its final federal constitutional claim (Count XI), Waste Services asserts a § 1983 conspiracy claim, alleging that all the defendants conspired to take its property without just compensation.  [DE 21, Mem. at 12.] In the complaint, Waste Services also mentions the "First" and "Fourth" Amendments in reference to the conspiracy claim. [DE 1, Complaint, ¶ 127.] It provides no factual allegations to support any such claims. Accordingly, the Court construes the

complaint to assert that the defendants conspired to violate Waste Services' rights under only the Fifth Amendment Takings Clause.

In addition to the federal constitutional due process and takings claims, Waste Services also asserts that the defendants violated the analogous provisions of the Kentucky constitution. *See* Ky. Const. §§ 13, 242 (uncompensated takings) (Count I); Ky. Const. §2 (due process) (Count II). Neither party asserts that these state constitutional claims should be analyzed differently than their federal counterparts. Accordingly, the Court has applied the same analysis to the federal and state constitutional claims. *See Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 612 (6th Cir. 2010) (construing Section 2 of the Kentucky Constitution and the Due Process Clause "in tandem"); *Baston v. Cty. of Kenton ex rel. Kenton Cty. Airport Bd*., 319 S.W.3d 401, 406 (Ky. 2010) (applying the same analysis to state and federal takings claims).

Waste Services also asserts several breach-of-contract claims. It asserts three such claims against the city of Georgetown (Counts IV, V, VI), asserting that the city breached certain agreements related to the purchase of the landfill from the city and also a release agreement that the parties entered into much later to resolve a financial dispute between them. Waste Services also asserts a breach-of-contract claim (Count VII) against Scott County, asserting that the county also violated contracts related to the landfill.

Waste Services asserts two claims for declaratory relief against Scott County. The first declaratory judgment requested (Count VIII) would clarify the parties' rights under contracts related to the landfill. The second (Count IX) would declare that the Amended SWMP is invalid and that the 2018-22 SWMP is the valid SWMP for Scott County.

Waste Services also asks for an injunction (Count X) that would enjoin Scott County from taking any action based on or relying on the Amended SWMP. It has filed a motion for

preliminary injunction requesting the same relief. [DE 3, Mot.] In that motion, Waste Services argues that the Amended SWMP is invalid under Kentucky statutes and regulations governing solid-waste management and that the Cabinet never should have approved it. [DE 3, Mem. at 14-16.] Waste Services argues that, among other problems, a SWMP cannot be amended until the county approves it for the next five-year cycle and the county failed to give sufficient public notice before approving the amendment. [DE 3, Mem. at 16.] Waste Services also argues that the Amended SWMP violates public policies set forth in the governing statutes. [DE 3, Mem. at 18.]

In addition to the equitable relief of an injunction and declaratory judgments, Waste Services also seeks compensatory and punitive damages against all the defendants.

The Court has jurisdiction over the constitutional claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

## II.   Analysis

### A.   City Defendants' Motion to Dismiss [DE 18]

The city is involved in this action because it sold the landfill to Waste Services by way of two agreements entered into in 1999. [DE 1, Complaint, ¶ 19; DE 18-2, Mem. at 3.] Later, in 2016, the city and Waste Services entered into a settlement agreement and release that resolved a dispute between them unrelated to this action. [DE 1, Complaint, ¶ 49; DE 18-2, Mem. at 3.]

None of the constitutional claims is based on the sale of the landfill or the 2016 settlement agreement. Waste Services' takings claim is based on actions that took place after it purchased the landfill: Planning Commission Director Kane's revocation of the Zoning Certification and Scott County's approval of the Amended SWMP. [DE 1, Complaint, ¶ 109.] Waste Services asserts that, because of these actions, the value of the landfill and expansion property has gone

11

from $110 million to zero. [DE 1, Complaint, ¶ 111.] The complaint, however, does not allege that the City Defendants took either of these actions.

As to the revocation of the Zoning Certification, Waste Services alleges that Kane took this action as director of the Planning Commission. As part of its efforts to obtain a solid-waste permit from the state allowing for expanded capacity at the landfill, Waste Services was required to obtain "from the local zoning authority a certification that the expansion proposal was in accord with zoning laws." [DE 1, Complaint, ¶ 39.] Waste Services further alleges that "the local zoning authority having jurisdiction over matters of land use planning and zoning in and about Scott County, Kentucky" is the Planning Commission. [DE 1, Complaint, ¶ 11.]

Thus, Waste Services alleges, in 2013, it contacted Earl Smith, who was the director of the Planning Commission at the time, requesting the Zoning Certification. [DE 1, Complaint, ¶¶ 40-41; DE 1-5, Smith Aff.] Waste Services alleges that Smith provided the certification. [DE 1, Complaint, ¶ 42.] Waste Services alleges that Kane is now the director of the Planning Commission, and that it was Kane who revoked Smith's Zoning Certification. [DE 1, Complaint, ¶¶ 57, 61-63.]

A city only has authority to act "within its boundaries." KRS § 82.082(1). There is no dispute that the landfill is not located within the city of Georgetown. It is located in Scott County, outside of the city's boundaries. With the following provision of the 1999 purchase agreement, Waste Services and the city agreed that the city had no zoning authority in the area where the landfill is located:

> 2.4 <u>Zoning</u>: The City has no zoning authority in the area of the Landfill and can make no representations of any zoning action, favorable or otherwise, related to the future performance of expansion of the Landfill. [Waste Services] acknowledges (a) no reliance upon the City in relation to any future zoning

12

> decisions, and (b) the granting or denial of any future zoning relief is irrelevant to the Parties' obligations under this Agreement.

[DE 1-1, 1999 Purchase Agreement, §2.4.]

As to the SWMP Amendment, Waste Services alleges that this was completed by the county, not the city. Waste Services alleges that it was Scott County that, in 1999, voted to authorize additional capacity of 6 million tons for the landfill for a total authorized capacity of 9.67 million tons. [DE 1, Complaint, ¶ 33.] Waste Services alleges that it was the county that "abruptly changed course" when it began efforts to amend the SWMP to reduce or eliminate the previously authorized capacity of 9.67 million tons. [DE 1, Complaint, ¶ ¶ 74-79, 82.] Waste Services alleges that it was the Scott County Fiscal Court that voted in 2020 to amend the SWMP to decrease capacity and that it was Scott County, through defendant Covington, that submitted the amendment to the Cabinet for approval. [DE 1, Complaint, ¶ 89, 92.]

Likewise, Waste Services alleges that it was Scott County, not the city of Georgetown that made the determination that the proposed expansion of the landfill did not comply with the Amended SWMP. Waste Services alleges that Scott County was the entity that needed to make the determination that the requested increase was consistent with the 2008-12 SWMP.  [DE 1, Complaint, ¶ 36.] Thus, Waste Services alleges that, in 2012, it requested the Consistency Determination from Scott County.  [DE 1, Complaint, ¶ 36.] Waste Services alleges that Scott County provided the Consistency Determination in 2012. [DE 1, Complaint, ¶ 37.] And Waste Services alleges that, in 2020, when it attempted to modify its permit to avoid zoning issues, it requested a Consistency Determination from Scott County, and it was the county that approved a resolution revoking the prior 2012 Consistency Determination. [DE 1, Complaint, ¶¶ 86, 90-91.]

As for Waste Services' due process claim, it is based on the way Kane revoked Smith's Zoning Certification and the way Scott County amended the SWMP.  [DE 1, Complaint, ¶ 117, 118.] Again, Waste Services does not allege any acts by the City Defendants that violated its due process rights.

In its response to the City Defendants' motion to dismiss, Waste Services argues that the actions by Kane and the Planning Commission regarding the Zoning Certification are "attributable" to the city. [DE 21, Mem. at 8-11.] It argues that "a city can be charged with responsibility for actions of its planning commission." [DE 21, Mem. at 10.] In support of this argument, it cites *Bd. of Comm'rs v. Davis*, 238 S.W.3d 132 (Ky. App. 2007) and *Ackermann Enterprises, Inc. v. City of Bellevue, Kentucky*, No. 14-207-ART, 2016 WL 4499659 (E.D. Ky. Aug. 24, 2016), opinion amended on reconsideration, No. 14-207-ART, 2016 WL 5171864 (E.D. Ky. Sept. 19, 2016).

In both of those cases, however, the city could be held liable for the actions at issue because the city was the entity that took the actions. In *Davis*, the issue was whether the city planning commission was an indispensable party in an action by property owners who were challenging a zoning ordinance enacted by the city's board of commissioners. The property owner plaintiffs sought a zone change. The property at issue was located in the city. The actions by the planning commission consisted only of recommending the zoning change. It was the city's board of commissioners that made the final decision in enacting the zone change ordinance. *Davis*, 238 S.W.3d at 134, 135.

Similarly, in *Ackermann Enterprises, Inc.*, the court found that the city was a proper party to the breach-of-contract and takings action by a property developer because the city took the actions that the developer complained about. The developer sued the city, alleging that it

14

breached the contract and committed a taking by denying its application to amend the site plan. The planning commission rejected the amendments proposed by the developer, but so did the city. The city argued that the developer should have sued the city, but the court held that the city committed the action that allegedly breached the agreement and constituted a taking, making it a proper party to the action. *Ackermann Enterprises, Inc.*, 2016 WL 4499659, at *3.

Here, in contrast, the city of Georgetown did not commit the zoning action at issue – the revocation of the Zoning Certification. That was done by Kane, as director of the planning commission and upheld by the Scott County Board of Adjustments. Waste Services does not allege that the city of Georgetown made any final decision or took any action whatsoever regarding the Zoning Certification. Nor would the city have any authority to make zoning decisions for the landfill property because the landfill is located outside of the city's boundaries.

The Court finds persuasive the analysis in *McDaniel v. City of Owensboro*, No. CIVA 4:04CV184 M, 2006 WL 3087136 (W.D. Ky. Oct. 26, 2006). There, the court held that "Kentucky state law clearly shows that planning commissions created pursuant to KRS § 100.133 are separate entities from the regional city and county governments they serve." *Id.* at *2. The court noted, "The mayors and county judge-executives that appoint a commission's members are not allowed to appoint *themselves*." *Id.* (citing 1982 Ky. Op. Att'y Gen. 2-106 (1982)). The planning commission must have its own by-laws, "separate and apart from municipality or county government." *Id.* (citing KRS § 100.167). Moreover, "While each municipality and county within a regional planning commission may contribute to a planning commission's budget, the commissions are not limited to such funding and can acquire monies to operate from any legal source." *Id.* (citing KRS § 100.177). Finally, the court noted, the

commission employs its own staff and can hire independent contractors to do its work. *Id.* (quoting KRS § 100.173).

Regardless, however, even if a city can at times be held liable for actions taken by a regional planning commission, the City Defendants cannot be held liable for the zoning decision at issue here. The City Defendants are liable for actions the city's legislative body and executive take regarding property within the city's boundaries. But the city has no authority to make zoning decisions beyond those boundaries. The zoning decision at issue here was made and could only be made by the Planning Commission and the Scott County Board of Adjustments. The City Defendants cannot be liable for zoning decisions they did not and cannot make.

With regard to Waste Services' conspiracy claim, a civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gard*ner, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985)). To prevail on a civil conspiracy claim, the plaintiff must show that (1) a "single plan" existed, (2) the defendant "shared in the general conspiratorial objective" to deprive the plaintiff of its constitutional (or federal statutory) rights," and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). It is "well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." Spadafore, 330 F.3d at 849 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987).

The only factual allegations that Waste Services makes against the City Defendants – the city of Georgetown and Mayor Tom Prather – are that the city sold it the landfill pursuant to certain written agreements [DE 1, Complaint, ¶ 19], that the city and Waste Services later entered into a

settlement and release agreement to resolve a financial dispute [DE 1, Complaint, ¶ 49], and that Mayor Prather later "became an increasingly outspoken critic of expanding the Landfill" despite promises the city made to the contrary in the agreements between the parties [DE 1, Complaint, ¶ 71]. These are not sufficient allegations from which it could be inferred that the City Defendants shared a single plan with others to take the landfill from Waste Services.

Waste Services makes only conclusory allegations that the defendants "engaged in a corrupt or unlawful combination or agreement" and "acted in concert" to deprive Waste Services of its land. [DE 1, Complaint, ¶ 191.] These are "legal conclusions," which are not sufficient to support a claim. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011). Waste Services' failure to plead facts from which the Court could infer a plan or agreement to violate its constitutional rights is "fatal" to its conspiracy claim. *Id.* This claim against the City Defendants must be dismissed.

Finally, the city itself can be held liable under § 1983 "only where its policy or custom causes the constitutional violation in question." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Monell v. Department of Social Services*, 398 F.3d 426 (1978)). Waste Services asserts such a *Monell* policy-and-custom claim against the City Defendants, but the complaint does not allege any such policy or custom. Accordingly, this claim must be dismissed.

The remaining claims against the City Defendants are three state-law claims for breach of contract.

The first such claim asserts that the city of Georgetown breached the 1999 purchase agreement by which Waste Services purchased the landfill. Waste Services points to two provisions. [DE 1, Complaint, ¶¶ 136, 137.] With the first provision, the city agreed that the city council had "duly authorized" certain actions by the city including "the City's taking all other

17

necessary actions to meet these obligations including, but not limited to, . . . seeking further concurrence of an expanded Service Area from the County and [the Kentucky Department of Environmental Protection] as required." [DE 1-1, Purchase Agreement, § 2.2.] The second provision provides that, if Waste Services provided notice that it wants "to expand the horizontal and/or vertical extent of the existing Waste footprint beyond that permitted by the KYDEP, the City covenants that it shall use its best efforts to assist [Waste Services] in obtaining any necessary permit modification(s) or other approval(s) from the KYDEP as are necessary to accomplish such expansion." [DE 1-1, Purchase Agreement, § 2.9.] The city further agreed that, "[i]f necessary," it would assist Waste Services "in its application for the revision of the Scott county Solid Waste Plan and any zoning approvals which may be necessary."

The second breach-of-contract claim is essentially a copy of the first such claim. [DE 1, Complaint, ¶ 146.] This one is based on an agreement between the parties called the Host Community Agreement in which the city agreed to perform all obligations in the other agreements related to the sale of the landfill. [DE 1-2, Host Community Agreement, §3.]

The final breach-of-contract claim against the city is based on a settlement agreement that the parties entered into long after the 1999 landfill purchase to resolve a dispute regarding amounts owed to each other. Waste Services points to a provision of the agreement providing that the city and Waste Services "shall not disparage or make negative comments about each other and shall make positive /affirmative statements concerning each other…" [DE 1, Complaint, ¶ 156; 1-11, Release, § 8.0]

For all of these claims, Waste Services relies on actions by the Planning Commission and Director Kane and statements by Mayor Prather. As to the actions of Planning Commission and

Kane, Waste Services again points to Kane's revocation of the Zoning Certification. [DE 21, Response at 22.] For the reasons discussed, this action cannot be attributed to the city.

As to Mayor Prather's statements, Waste Services alleges that the mayor made statements that were "disparaging" about the "presence of the landfill" and were "to the effect that waste transported from the City of Lexington, Kentucky and other counties was not wanted at the Landfill, and that he opposed vertical expansion of the landfill." [DE 1, Complaint, ¶ 71; DE 21, Response at 22.]

Causation is an element of a breach of contract claim. *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019); *Myers v. AgriLogic Ins. Servs., LLC*, 694 F. App'x 373, 376 (6th Cir. 2017). The only damage that Waste Services alleges is the diminution in the value of the landfill and expansion property. It does not allege, however, that Mayor Prather's statements caused that diminution. Instead, it alleges that the Cabinet's failure to issue the expansion permit caused the diminution. And it alleges that the Cabinet's failure to issue the expansion permit was, in turn, caused by actions of Director Kane (revoking the Zoning Certification) and by the County (amending the SWMP). [DE 25, Mem. at 16.] This is because, according to the complaint, both the Zoning Certification and SWMP Consistency Determination were required for the expansion permit. [DE 1, Complaint, ¶¶ 36, 39.] As discussed, the City Defendants had no jurisdiction or authority over either of those actions. Accordingly, the breach of contract claims against the City Defendants must be dismissed.

### B. Motion to Dismiss by County Defendants and the Planning Commission Defendants [DE 20-1]

Waste Services asserts the same constitutional claims against the County Defendants and the Planning Commission Defendants as it does against the City Defendants: takings, due process, § 1983 conspiracy, and *Monell* claims.

In addition to the federal claims, Waste Services asserts claims against Scott County for breach of contract (Count VII), and it requests a declaration of rights (Count VIII) regarding the agreement between the parties related to the landfill. Waste Services also asks the Court to declare that the Amended SWMP is invalid and that the 2018-22 SWMP is the valid SWMP for Scott County (Count IX). Likewise, Waste Services asks the Court to issue an injunction that would prohibit Scott County from taking any action on or relying on the Amended SWMP.

The County Defendants ask that the Court abstain from exercising jurisdiction over the federal claims against them. They argue that abstention is appropriate under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United Stat*, 424 U.S. 800, 813 (1976). "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (quoting *Colorado River*, 424 U.S. at 817). Nevertheless, the Supreme Court has recognized that "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is the 'normal thing to do.'" *New Orleans Pub.*

*Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).

"*Pullman* abstention is appropriate where a litigant asks a federal court to reach a constitutional question predicated on the federal court's own, non-binding interpretation of state law." *Stein v. Thomas*, 672 F. App'x 565, 571 (6th Cir. 2016) (citing *Moore v. Sims*, 442 U.S. 415, 425 (1979)). It is invoked "to avoid a decision on federal constitutional questions when the case hinges upon unresolved questions of state law." *Fifth Column, LLC v. Vill. of Valley View*, 221 F.3d 1334 (6th Cir. 2000).

"Under the *Pullman doctrine*, where a state law is being challenged in federal court as contrary to the federal Constitution and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state courts to decide the state issues." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 563 (6th Cir. 1982). "*Pullman* abstention is appropriate in a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question." *Id*.

The Sixth Circuit has established two requirements for a *Pullman* abstention: 1) an unclear state law and 2) the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question. *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir.1983).

"*Pullman* abstention is warranted only when a state law is challenged and resolution by the state of certain questions of state law may obviate the federal claims, or when the challenged law is susceptible of a construction by state courts that would eliminate the need to reach the federal question." *GTE N., Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000). This case does not involve a challenge to any state law. Accordingly, *Pullman* abstention is not appropriate.

21

The *Burford* abstention doctrine "is concerned with protecting complex state administrative processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans* ("NOPSI"), 491 U.S. 350, 362 (1989) Under it, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id*. at 361 (quoting *Colorado River*, 424 U.S. at 814).

Solid-waste management is a matter of substantial public concern in Kentucky. It is subject to a complex regulatory scheme administered by the Cabinet. By statute, the state has declared a policy to "provide for the management of solid waste, including reduction, collection, transportation, and disposal in a manner that will protect the public health and welfare, prevent the spread of disease and creation of nuisances, conserve our natural resources, and enhance the beauty and quality of our environment." KRS. § 224.43-010(1). Toward that end the state has sought to enact a "a comprehensive and integrated waste management system . …" KRS § 224.43-010(4).

The statutory scheme involves interaction between local and state governments. The state plan recognizes that "counties and waste management districts . . . are in the best position to make plans for municipal solid waste collection services for its citizens." KRS § 224.43-010 (6). But the plan also recognizes that these local entities require the Cabinet's assistance in implementing their solid waste management plans. The state designates the Cabinet as the entity

22

with "primary responsibility for coordinating the solid waste planning and management activities of waste management districts, counties, cities, area development districts, and any combination thereof and for the approval of solid waste management facilities." KRS § 224.43-310(1).

The statutory scheme sets out procedures for hearings before the Cabinet. KRS § 224.10-440. It also provides for judicial review in Franklin Circuit Court of the Cabinet's final orders. KRS § 224.10-470(1).

As discussed, five proceedings related to this federal action are currently pending in state court or at the Cabinet:

1) the SCBOA's denial of the Zoning Certification is pending in the Kentucky Court of Appeals. *Waste Services of the Bluegrass, LLC, et al. v. Scott County Board of Adjustments*, 2018-CA-001225 (Ky. App.).

2) the Scott County Fiscal Court's Denial of Waste Service's application to amend the Scott County zoning map is pending in Scott Circuit Court. *Waste Services Realty, LLC, et al. v. Scott County Fiscal Ct.*, Scott Circuit Ct., No. 18-CI-00187.

3) the Cabinet's denial of Waste Services expansion application is pending in Franklin Circuit Court. *Waste Services of the Bluegrass, LLC v. Comm. of Kentucky Energy and Environment Cabinet, et al.* Franklin Circuit Court, Div. 1, Civil Action No. 20-CI-00332.

4) Waste Services' petition for the Cabinet to review its approval of the Amended SWMP is pending with the Cabinet. *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet*, Energy and Env't Cabinet, Office of Admin. Hr'gs, No. DWM-20-1-0816; and

5) Waste Services' petition for the Cabinet to review its return of Waste Services' application to modify its permit remains pending with the Cabinet. *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet*, Energy and Env't Cabinet, Office of Admin. Hr'gs, No. DWM-20-1-0888.

In this federal action, Waste Services asks the Court to declare that the Amended SWMP is invalid and that the 2018-22 SWMP is the valid SWMP for Scott County. [DE 1, Complaint, Count IX.] Waste Services also asks the Court to issue an injunction that would prohibit Scott County from taking any action on or relying on the Amended SWMP. [DE 1, Complaint, Count X.] The Court will abstain from exercising jurisdiction over the declaratory judgment action asserted in Count IX and over the injunctive relief requested in Count X. Issuing the requested declaration and injunction would directly interfere with the Cabinet's order approving the Amended SWMP.

To the extent that Waste Services seeks compensatory damages, however, Waste Services' constitutional claims do not require the Court to interfere with any orders or decisions of the Cabinet. With these claims, Waste Services seems to assume that the County and Planning Commission Defendants' decisions on the Zoning Certification and Amended SWMP and the Cabinet's decision on the expansion permit are final decisions. Waste Services asks this Court to award it compensatory damages for violations of its constitutional rights that it alleges occurred in the process and as a result of these actions. [DE 1, Complaint, ¶ 113.]

Nor do these claims require the Court to decide any disputed issue of state law. The issues on the takings claim will be whether Waste Services possessed a cognizable "property interest" in the landfill and adjoining property and whether the governmental actions constituted a "taking" of that property interest. *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d

24

435, 481 (6th Cir. 2004). "[G]overnmental action short of acquisition may constitute a constructive taking 'if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter.'" *Amen v. City of Dearborn*, 718 F.2d 789, 796 (6th Cir. 1983) (quoting *General Motors Corp*., 323 U.S. at 378.)

The issue on the procedural due process claim will not be whether the defendants followed local or state procedural rules and laws. *Purisch v. Tennessee Tech. Univ*., 76 F.3d 1414, 1423 (6th Cir. 1996); *Kvapil v. Chippewa Cty., Wis.*, 752 F.3d 708, 715 (7th Cir. 2014) ("A local government's failure to follow its own procedural rules, however, does not violate due process.") Instead, the issue on Waste Services' due process claim will be whether the defendants provided Waste Services with proper notice and an opportunity for a pre-deprivation hearing. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).

Thus, the constitutional claims present the issues of whether Waste Services had a property interest in the landfill and adjoining property; whether the County and Planning Commission Defendants effected a taking of that property interest with the approval of the SWMP amendment and the revocation of the Zoning Certification; and whether Waste Services had proper notice and an opportunity for a hearing prior to these actions.

Accordingly, *Burford* abstention is not appropriate for the constitutional claims insofar as Waste Services requests compensatory damages. *See Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009) ("Every case in which we have found *Burford* abstention appropriate has involved evidence that federal involvement would disrupt a coherent state policy."); *GTE N., Inc. v. Strand*, 209 F.3d 909, 920 (6th Cir. 2000)(because this case does not concern a disputed issue of state law. . . *Burford* abstention is inappropriate.)

In support of its argument that the Court should abstain from exercising jurisdiction over all federal claims under *Burford*, the county cites *Coal. for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995). In that case, however, the court determined that plaintiffs' claims "do not and cannot arise in isolation from state law issues." *Id.* at 1194. Instead, the plaintiffs' claims sought equitable relief for "alleged violations of *state* and federal" laws regarding the handling of solid and hazardous wastes. *Id.* In particular, the plaintiffs alleged that the state agency had failed to apply or had misapplied state and federal law in issuing the defendant an operating permit. *Id.* at 1195. The Sixth Circuit determined, "We do not see how these allegations can reasonably be interpreted to be anything other than a collateral attack on Kentucky's hazardous waste permitting process in an effort to enjoin the issuance to [the defendant] of an operating permit." *Id.* at 1192.

The county also cites *Ada-Cascade Watch Co. v. Cascade Res. Recovery, Inc*., 720 F.2d 897, 898 (6th Cir. 1983). In that case, the plaintiffs sued the operator of a hazardous waste facility alleging that the construction violated federal law because the facility had failed to obtain all necessary state permits. The "central issue" in the case was whether the defendants had obtained all the necessary state and local permits that would permit them to construct a hazardous waste facility under federal law. *Id.* at 901.

The case required the court to determine whether there was an inconsistency between a state rule and state statute. The plaintiffs "essentially request[ed] that [the court] review two provisions of state law" – which the court determined were an "integral part" of the state's complex system of permit review and approval for hazardous waste facilities – and find them "inconsistent, and therefore illegal." *Id.* at 905. Further, the plaintiffs were asking the court to "second-guess a state agency in its determination that no other permits were necessary to

26

construct a hazardous waste facility." *Id.* The court determined that federal courts are "ill-equipped to review state rules and regulations which have an entirely local effect" and that undertaking that review "would be unnecessary and a disruptive interference into the local affairs of the State of Michigan." *Id.* at 906. Instead, the plaintiffs should challenge the agency's administrative ruling in state court. *Id.*

In contrast to *Ada-Cascade Watch Co.* and *Coal. for Health Concern*, to the extent that Waste Services seeks compensatory damages, its federal claims do not require this Court to decide any issues of state law or to interfere in state policy on waste management or in the decisions of a state agency.

Nevertheless, the Court does find abstention appropriate for the claims against the County and Planning Commission Defendants under *Younger v. Harris*, 401 U.S. 37 (1971

Three requirements have developed for proper application of the Younger doctrine: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 481 (6th Cir. 1997). The *Younger* abstention doctrine may be raised *sua sponte* by the Court. *Hill v. Snyder*, 878 F.3d 193, 206 n.3 (6th Cir. 2017); *Louisville Country Club v. Watts*, 178 F.3d 1295 (6th Cir. 1999) (citing *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10 (1976); *Federal Express Corp. v. Tennessee Public Serv. Comm'n*, 925 F.2d 962, 966 (6th Cir.1991)).

This case is similar to *Nimer v. Litchfield Twp. Bd. of Trustees*, 707 F.3d 699, 700 (6th Cir. 2013). In that case, the plaintiff owned land where they operated a business that produced meat snacks such as beef jerky. They wanted to expand the business to include the butchering of cattle and pigs. Their land, however, was zoned for residential use. Without getting zoning approvals,

the plaintiff began constructing buildings on the land for the butchering operations. The town sued the plaintiffs in state court, which issued an injunction that prohibited the plaintiffs from using the buildings for anything other than the keeping and feeding of animals until they got zoning approvals for butchering. The plaintiffs appealed to the state court of appeals. While that appeal was pending, the plaintiffs filed a federal action against the town alleging violations of their due process rights under § 1983.

The Sixth Circuit determined that the plaintiff's appeal of the state court injunction constituted an ongoing state proceeding. *Id*. at 701. The court found the state-court proceeding involved a city's "substantial interest in enforcing its zoning laws without federal interference in the state's judicial processes [.]" *Id*. (quoting *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 791 (6th Cir.2004)). Finally, the court found, the plaintiffs had an "adequate opportunity to raise their constitutional claims" in the state proceedings. *Id*.

Here, as described above, there are five ongoing state proceedings currently pending in three state tribunals: the Cabinet, two state circuit courts, and the Kentucky Court of Appeals. These proceedings involve the important state interest in managing solid waste. Moreover, Waste Services may raise federal constitutional claims in the state proceedings.

The next issue is whether the Court should dismiss the claims remaining in this action or stay this case pending resolution of the state-court proceedings. In *Nimer*, the Court held that claims for damages may not be dismissed under the *Younger* doctrine in cases where the plaintiffs are seeking purely legal relief. *Id*. at 702. While, as discussed, the Court will dismiss two of Waste Services' claims for equitable relief (Counts IX and X) pursuant to the *Burford* abstention doctrine, one claim for declaratory judgment (Count VIII) regarding the parties' rights under a particular agreement remains. The Court will stay that claim along with Waste Services' claims

28

for damages against Scott County pending resolution of the various state court and administrative proceedings. *See Jordan v. Union Twp. Bd. of Trustees*, No. 1:18-CV-53, 2019 WL 5576499, at *5 (S.D. Ohio Oct. 29, 2019) (staying case when the plaintiff sought both equitable and legal relief); *Huth v. Hubble*, No. 5:14-cv-1215, 2016 WL 966307, at *10 (N.D. Ohio Mar. 4, 2015) (same).

### 3   Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the motion to dismiss [DE 18] filed by the City of Georgetown and Mayor Tom Prather is GRANTED. All claims against these DEFENDANTS are DISMISSED, and these defendants are DISMISSED from this action;

2) the motion to dismiss [DE 20] filed by the County and Planning Commission Defendants is GRANTED in part and DENIED in part as follows:

   a) Count IX (request for a declaration that the Amended SWMP is invalid) and Count X (requested for injunction prohibiting Scott County from treating the Amended SWMP as valid) against these defendants are DISMISSED pursuant to the *Burford* abstention doctrine; and

   b) the motion is otherwise DENIED; and

3) Waste Services' constitutional claims (Counts I, II, III, and XI) and breach-of-contract claim (Count VII) against the Planning Commission and County Defendants, to the extent Waste Services seeks compensatory damages for these claims, and its request for a declaratory judgment (Count VIII) are STAYED pending resolution of the various state court and administrative proceedings discussed in the opinion.

4) Waste Services SHALL FILE a notice with the Court within 14 days of the resolution of each of the state court and administrative proceedings; and

5) Waste Services' motion for preliminary injunction (DE 3) is DENIED. The motion requests that the Court enjoin Scott County from relying on or enforcing the Amended SWMP. For the reasons stated in this opinion, the Court has abstained pursuant to the *Burford* abstention doctrine from exercising jurisdiction over all equitable claims in this matter that require the Court to interfere with the Cabinet's orders regarding the Amended SWMP.

By Agreed Order [DE 23], the parties previously dismissed the claims against the Cabinet. Accordingly, the sole claims remaining in this action are the claims against the County and Planning Commission Defendants that are stayed pursuant to paragraph 3 above.

Dated April 16, 2021



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY