**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION -- LEXINGTON**

| | |
|---|---|
| **WASTE SERVICES OF THE BLUEGRASS, LLC** and **WASTE SERVICES REALTY, LLC,** | **CIVIL ACTION NO. 5:20-410-KKC** |
| **Plaintiffs,** | |
| **V.** | **OPINION AND ORDER** |
| **CITY OF GEORGETOWN, KENTUCKY**; **TOM PRATHER,** *individually and in his official capacity as Mayor***; SCOTT COUNTY, KENTUCKY FISCAL COURT; JOE PAT COVINGTON,** *individually and in his official capacity as Scott County Judge/Executive***; GEORGETOWN-SCOTT COUNTY PLANNING COMMISSION; JOE KANE**, *individually and in his official capacity as Director of the Georgetown-Scott County Planning Commission***; COMMONWEALTH OF KENTUCKY, ENERGY AND ENVIRONMENT CABINET;** and **JOHN DOES 1-25.** | |
| **Defendants.** | |

\*\*\*\*\*\*\*\*\*

This matter is before the Court on the second motion to dismiss (DE 40) filed by the remaining defendants in this action. For the following reasons, the Court will grant the motion.

**I.  Facts**

**A.  The parties**

The plaintiffs (together, "Waste Services") own a landfill and adjoining property located in Scott County. In its complaint, Waste Services alleges that the defendants took two actions

that have prohibited it from expanding the capacity of the landfill, which has reduced the value of the landfill and the adjoining property to almost nothing. (DE 1, Complaint, ¶ 1, 2, 111.)

As explained in its April 16, 2021 opinion on a prior motion to dismiss, the two actions are 1) a letter that determined Waste Services' proposed expansion of the landfill onto an adjoining 500-acre tract did not comply with local zoning ordinances and 2) an amendment of the county's Solid Waste Management Plan ("SWMP") that did not allow for the continued disposal of solid waste in the county beyond that allowed under current permits.

In its complaint, Waste Services asserts claims against three groups of defendants. Members of the first group are associated with Scott County, where the landfill and adjoining property are located. (DE 1, Complaint, ¶ 1, 17.) These defendants consist of the Scott County Fiscal Court and Joe Pat Covington, who is the Scott County Judge/Executive (together, the "County Defendants"). The Scott County Fiscal Court is relevant to this action because it is the entity that amended the county SWMP. (DE 1, Complaint, ¶ 91.)

Members of the second group of defendants are associated with the city of Georgetown, Kentucky, which is located in Scott County. These defendants consist of the city itself and Tom Prather, the Georgetown mayor (together, the "City Defendants"). It is undisputed that neither the landfill nor the adjoining property is located in the city of Georgetown, but the city is involved in this action because it owned the landfill and sold it to Waste Services. (DE 1, Complaint, ¶ 18, 19.)

The third group of defendants are associated with the Georgetown-Scott County Planning Commission. These defendants consist of the planning commission and Joe Kane, the director of the planning commission (together, "the Planning Commission Defendants"). The planning commission is relevant to this action because it is "the local zoning authority having

2

jurisdiction over matters of land use planning and zoning in and about Scott County." (DE 1, Complaint, ¶ 11.) Planning Commission Director Kane wrote the letter that determined that Waste Services' proposed expansion of the landfill onto the 500-acre tract did not comply with local zoning ordinances. This was the second of the two actions that formed the basis for Waste Services' complaint. (DE 1, Complaint, ¶ 62.)

The claims and defendants have been whittled down since the filing of the Complaint. With the April 16, 2021 opinion, the Court dismissed all claims against the City Defendants (the City of Georgetown and Mayor Tom Prather). Accordingly, the only defendants remaining in this action are the Planning Commission Defendants and the County Defendants all of whom filed this second motion to dismiss. The Court will refer to these moving defendants together as simply the "Defendants" in this opinion unless it is necessary to distinguish them.

### B. Facts

None of the parties disputes the facts set forth in the Court's April 16, 2021 (DE 28) opinion on the Defendants' first motion to dismiss. (DE 43, Response at 3.) These background facts largely come from that opinion.

Scott County is required to submit to the Kentucky Energy and Environment Cabinet (the "Cabinet") a solid waste management plan ("SWMP") for the area over which it has jurisdiction. It is required to update the plan every five years. Any amendments to the plan must be submitted to the Cabinet for approval. KRS 224.43-340(2). In February 1999, the county voted to amend its Solid Waste Management Plan ("SWMP") to increase solid waste capacity at the landfill from 3.67 million tons to 9.67 million tons. (DE 1, Complaint, ¶ 33.)

A few months later, in April 1999, a company called Waste Services of the Bluegrass, Inc. bought the landfill from the city of Georgetown. (DE 1, Complaint, ¶ 2; DE 2, Response at 15.) Waste Services of the Bluegrass, Inc. is not a plaintiff in this action, but plaintiff Waste Services of the Bluegrass, *LLC* ("Waste Services") asserts that it is the successor in interest to Waste Services of the Bluegrass, *Inc.* (DE 1, Complaint, ¶ 5; DE 21, Response at 15.) The landfill tract consisted of 102.8 acres, 46.8 acres of which were used for solid waste disposal. (DE 1, Complaint, ¶ 18.) The remainder of the 102.8-acre tract was used for ancillary activities that are necessary for the operation of the landfill including piping, drainage structures, and sediment ponds. (DE 1-12, Kane Letter.)

Waste Services asserts that its predecessor paid millions of dollars for the landfill with "the expectation and understanding" that it would be expanded [.] (DE 1, Complaint, ¶ 2.) According to Waste Services, for the first 18 years that it owned the landfill, the county was on the same page, and both parties worked together toward the landfill's expansion. (DE 1, Complaint, ¶ 50.) In 2010, Waste Services bought the 500-acre tract adjoining the property upon which the landfill is located. (DE 1, Complaint, ¶ 35; DE 3, Mem. at 6.) Every SWMP that the county approved from 1991 to 2019 included the landfill's expanded capacity of 9.67 million tons. (DE 1, Complaint, ¶ 33.) The most recent SWMP that included the expanded capacity covered the years from 2018 to 2022 and was approved by the county on September 29, 2017. (DE 3, Mem. at 10.)

In 2012, Waste Services began efforts to obtain a permit from the state that would permit it to horizontally expand its operations to include the newly acquired 500-acre tract. (DE 1, Complaint ¶ 36; DE 3, Mem. at 6.) As part of the application for the permit, Waste Services was required to obtain two approvals from local authorities that are important to this action.

4

First, Waste Services was required to obtain a determination that the proposed expansion was consistent with Scott County's SWMP. (DE 1, Complaint, ¶ 36.) On May 11, 2012, the Scott County Fiscal Court provided the consistency determination (the "2012 SWMP Consistency Determination"). (DE 1, Complaint, ¶ 36-37.)

Second, Waste Services was required to obtain a certification from the "local zoning authority" that the expansion complied with local zoning ordinances. (DE 1, Complaint, ¶ 39.) On August 8, 2013, Waste Services engineer James Wade e-mailed the then-director of the planning commission, Earl Smith. Wade explained that Waste Services wanted to expand the area on the 102.8-acre tract used for actual disposal of waste beyond the 46.8 acres currently used for solid waste disposal. Wade explained that Waste Services wanted to expand the "waste limits as much as possible within the limits of the property they purchased from the city some 13-14 years ago." Wade explained that Waste Services also proposed "to add (the newly acquired 500-acre tract) into its permit." Wade explained that the 500-acre tract would not be used for actual waste disposal but for the ancillary activities necessary for the landfill operation. (DE 1-5, Smit Aff., Ex. A.)

By memo dated August 8, 2013, Smith certified that "the expansion of the landfill *within the current property boundary* does not conflict with Scott County planning and zoning ordinances." (DE 1, Complaint, ¶¶ 40-42; DE 1-5, Smith Aff., Ex. B) (emphasis added). The Court will refer to this certification as the "2013 Smith Zoning Certification."

On December 20, 2016, the Cabinet issued a draft permit to Waste Services approving the proposed expansion of the landfill. (DE 1, Complaint, ¶ 56.) The Cabinet also issued a public notice soliciting comments on the application and draft permit. (DE 1, Complaint, ¶ 56.)

5

According to Waste Services, this is when an "outspoken sect of the community" began to voice opposition to the expansion. (DE 1, Complaint, ¶ 57.) As discussed, in its complaint, Waste Services complained of two critical actions that certain of the defendants took in response to the public outcry. Waste Services alleged in the complaint that these acts prohibited it from expanding the landfill. (DE 1, Complaint, ¶¶ 66, 95-100; DE 25, Mem. at 16.)

First, by letter dated January 18, 2017, defendant Jack Kane, who became director of the Georgetown-Scott County Planning Commission after Smith, issued a letter to "clarify" whether expanding the landfill beyond the original property boundaries conformed with the local zoning ordinance (the "2017 Kane Zoning Letter"). Kane stated that his letter should be considered the "updated and current Zoning Compliance letter." (DE 1-12, 2017 Kane Zoning Letter.)

Kane explained that the 2013 Smith Zoning Certification certified "that expansion of the landfill within the current property boundaries does not conflict with Scott County planning and local ordinances." Kane explained that this was because the previous landfill owner, the city of Georgetown, as a local governmental entity, was exempt from complying with the county zoning ordinance. As a private entity, however, Waste Services was not exempt. He asserted that Waste Services was permitted to continue to operate the landfill as a "legal nonconforming use" only because that was how the landfill was operated at the time Waste Services purchased it.

As to the newly acquired 500-acre tract, however, Kane determined that this tract was subject to the zoning ordinances. This was because Waste Services did not purchase this tract from the city, nor was this tract previously approved for a landfill. Kane noted that the 500-

acre tract would be used for ancillary activities necessary for the landfill operation like "soil borrow, piping, drainage structures, sediment points, scales, etc." This was because a larger portion of the 102.8-acre original tract would be used for solid waste disposal, leaving no room any longer on that tract for the ancillary activities. Kane determined that these ancillary activities were part of the "landfill" operation and any portion of the 500-acre tract that would be used for the landfill operation would have to be rezoned from agricultural to industrial. (DE 1, Complaint, ¶ 63; DE 1-12, Kane Letter.)

Waste Services appealed Kane's determination to the Scott County Board of Adjustments ("SCBOA"). (DE 1, Complaint, ¶ 67.) On March 14, 2017, the SCBOA conducted a hearing and upheld Kane's determination. (DE 1, Complaint, ¶ 67-69; DE 20-3, February 9, 2017 Admin. Appeal.) Waste Services appealed the SCBOA's ruling to the Scott Circuit Court. (DE 20-4, Complaint.) On July 13, 2018, the Scott Circuit Court granted summary judgment to the county. (DE 20-5, Opinion.) Waste Services then appealed the Scott Circuit Court's ruling to the Kentucky Court of Appeals. (DE 20-7 at 5, n.1; DE 18-2, Mem. at 1; *Waste Services of the Bluegrass, LLC, et al. v. Scott Cty. Bd. of Adjustments*, *et al.*, 2018-CA-001225 (Ky. Ct. App.) That appeal was pending at the time of the Court's April 2021 Opinion. The Kentucky Court of Appeals has now upheld the SCBOA's decision. *Waste Services of the Bluegrass, LLC, et al. v. Scott County Board of Adjustments, et al.*, 2018-CA-001225 (Ky. Ct. App. Opinion dated April 23, 2021). Waste Services did not further appeal this decision. (DE 43, Response at 4.)

On December 1, 2017, Waste Services applied to the planning commission for an amendment to the Scott County zoning map to change a portion of the 500-acre expansion property from agricultural to industrial, which would render the expansion compliant with the

zoning ordinance. (20-1, Mem. at 4, n.3; DE 20-6, Complaint.) Waste Services had no luck with that approach either. The planning commission recommended that the Scott County Fiscal Court deny the application. (DE 20-6, Complaint, ¶ 19; DE 20-1, Mem. at 4 n.3.) The Scott County Fiscal Court affirmed the planning commission's recommendation. Waste Services appealed the fiscal court's decision to the Scott Circuit Court. (DE 20-6, Complaint; DE 20-1, Mem. at 4 n.3; *Waste Services Realty, LLC, et al. v. Scott County Fiscal Ct.*, No. 18-CI-00187, Scott Circuit Ct.) That appeal was pending at the time of the Court's April 2021 decision. Later, pursuant to the parties' stipulation, the Scott Circuit Court dismissed the appeal. (DE 43, Response at 4.)

Faced with an expansion application with no zoning certification, on January 26, 2017, the Cabinet issued a Notice of Deficiency on the expansion permit application. (DE 1, Complaint, ¶ 66.) On April 17, 2020, the Cabinet denied Waste Services' expansion application. (DE 20-7, Appeal at 2-3.) On May 14, 2020, Waste Services appealed that denial to the Franklin Circuit Court. (DE 3, Mem. at 7, n.2; DE 18-2, Mem. at 2; *Waste Services of the Bluegrass, LLC v. Comm. of Kentucky Energy and Environment Cabinet, et al.* Franklin Circuit Court, Div. 1, Civil Action No. 20-CI-00332.) That appeal was pending at the time of the Court's April 2021 opinion. Since then, the Franklin Circuit Court has upheld the Cabinet's denial of Waste Services' expansion application. (DE 43, Response at 4; DE 30, Notice; *Waste Services of the Bluegrass, LLC v. Comm. of Kentucky Energy and Environment Cabinet, et al.*, Civil Action No. 20-CI-00332, Franklin Circuit Ct., Div. 1.)

Waste Services then took yet another approach to obtaining a permit from the Cabinet that would allow for expanded capacity. On June 1, 2020, it applied to the Cabinet for a modification to its existing permit that would allow it to expand the horizontal boundary of

8

the landfill over the original landfill site, as opposed to utilizing the 500-acre adjoining tract. (DE 1, Complaint, ¶ ¶ 86; DE 3, Mem. at 9.) The Cabinet advised Waste Services that it must first obtain a determination from the county that the modification was consistent with the Scott County SWMP. (DE 1, Complaint, ¶ ¶ 86.)

This leads to the second action that, according to Waste Services, precluded it from obtaining a permit for expanded capacity at the landfill. Beginning in March 2019, the county had been taking actions to amend the 2018-22 SWMP to reduce or eliminate capacity at the landfill. (DE 3, Mem. at 10.) On June 25, 2020, the Scott County Fiscal Court finally approved a resolution amending the 2018-22 SWMP to "zero out capacity for the disposal of waste within the solid waste area . . . ." (DE 1, Complaint, ¶ ¶ 89-91.) The resolution provided that there would be no capacity for solid waste disposal in the county "beyond that for which a valid and extant determination of consistency has been previously provided." (DE 1-20, Resolution.)

On August 10, 2020, the Scott County Fiscal Court adopted a resolution finding that Waste Services' proposed expansion was not consistent with the amended SWMP (the "2020 SWMP Amendment"). (DE 20-1, Mem. at 6; DE 20-8, Resolution.)

The Cabinet approved the 2020 SWMP Amendment on August 12, 2020. (DE 1, Complaint, ¶ 92.) On September 11, 2020, Waste Services filed a petition for review with the Cabinet, alleging that its approval of the Amended SWMP was improper. (DE 20, Mem. at 6; DE 20-10, Petition, *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet*, Energy and Env't Cabinet, Office of Admin. Hr'gs, No. DWM-20-1-0816.)

9

On September 14, 2020, the Cabinet returned Waste Services' application to modify the permit, explaining that, because of the 2020 SWMP Amendment, the agency could not issue a permit authorizing additional capacity at the landfill. (DE 20-1, Mem. at 6; DE 20-11, Letter.) On October 14, 2020, Waste Services filed another petition for review with the Cabinet alleging that the agency had improperly refused to review its permit application. (DE 20-1, Mem. at 6; DE 20-12, Petition, *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet*, No. DWM-20-1-0888, Office of Admin. Hr'gs.)

Both of Waste Services' petitions for review with the Cabinet were still pending at the time of the Court's April 2021 opinion. Later, the Cabinet consolidated the petitions to review and affirmed the validity of the Amended SWMP and held that the Cabinet properly refused to review Waste Service's modification application. *Waste Services of the Bluegrass, LLC v. Commonwealth of Ky. Energy and Env't Cabinet and Scott County Fiscal Court*, Energy and Env't Cabinet, Office of Admin. Hr'gs, Nos. DWM 20-1-0816, DWM-20-1-0888; (DE 43, Response at 5.)

Thus, all of the various state administrative and court matters that were pending at the time of the Court's April 16, 2021 Opinion have all been finally resolved in the Defendants' favor.

Waste Services asserts in its response brief that the landfill is no longer operational, (DE 43, Response at 2-3) and that the 500-acre adjoining tract has "no prospects for economic use either." (DE 43, Response at 4.)

### C.  The Remaining Claims

In this action, Waste Services asserts multiple federal and state claims against the Defendants. The Court dismissed some of the claims in its April 16, 2021 opinion. There are six remaining claims:

- unconstitutional taking under state and federal law (Count I)[1]

- violation of procedural due process under state and federal law (Count II)[2]

- unconstitutional custom and policy under federal law (the "*Monell* claims") (Count III)

- conspiracy to commit an unconstitutional taking under federal law (Count XI)

- breach of contract against Scott County (Count VII)

- request for a declaratory judgment against Scott County (Count VIII)

The Defendants move to dismiss all of these claims. In its response to the motion to dismiss, Waste Services indicates that, in the Court's April 16, 2021 opinion, the Court ruled on the merits in some manner on these claims. That is incorrect. The Court stayed all of these claims pending resolution of the various state court and administrative proceedings that were pending at the time of the April 16, 2021 opinion. The Court has in no way ruled on the merits on any of the claims remaining in this action.

---

[1] Neither party asserts that the state takings and due process claims should be analyzed differently than their federal counterparts. Accordingly, the Court has applied the same analysis to the federal and state constitutional claims. *See Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 612 (6th Cir. 2010) (construing Section 2 of the Kentucky Constitution and the Due Process Clause "in tandem"); *Baston v. Cty. of Kenton ex rel. Kenton Cty. Airport Bd.*, 319 S.W.3d 401, 406 (Ky. 2010) (applying the same analysis to state and federal takings claims).

[2] Waste Services does not specify in its complaint whether it asserts a procedural or substantive due process claim. The Court explained in its April 16, 2021 opinion that it interpreted the complaint to assert a procedural due process claim, not a substantive due process claim. Waste Services does not object to that interpretation in its response to this motion to dismiss. Accordingly, the Court will continue to interpret the complaint to assert a procedural due process claim.

11

## II. Analysis

### A. Official Capacity Claims

Waste Services asserts the constitutional claims against Scott County Judge/Executive Covington and Planning Commission Director Kane in both their individual and official capacities. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Com. v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001). Because the claims against Kane and Covington in their official capacities are regarded as claims against the planning commission and the county, the official-capacity claims will be dismissed as superfluous. *J.H. v. Williamson Cnty., Tenn*., 951 F.3d 709, 723 n.4 (6th Cir. 2020); *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014)).

The claims asserted against Kane and Covington in their official capacities are the federal and state due process and takings claims and the §1983 conspiracy and *Monell* claims. All of these official capacity claims will be dismissed.

### B. The State and Federal Due Process and Takings Claims against the Planning Commission Defendants

Again, Waste Services' complaint alleged two unconstitutional government actions: the 2017 Kane Zoning Letter and the 2020 SWMP Amendment.

In their motion to dismiss, the Defendants argue that Waste Services' constitutional claims are time barred to the extent that they are based on the 2017 Kane Zoning Letter. The § 1983 claims are subject to a one-year statute of limitations. *See Brown v. Wigginton*, 981 F.2d 913, 914 (6th Cir. 1992). Likewise, a one-year statute of limitations applies to the state due process and takings claims. *Million v. Raymer*, 139 S.W.3d 914, 919 (Ky. 2004) ("We are of the opinion that application of the one-year statute of limitations period under KRS 413.140 for constitutional

claims such as those made herein is consistent with federal law governing essentially the same types of claims.") *Wade v. Com., Just. & Pub. Safety Cabinet*, No. 2012-CA-001265-MR, 2013 WL 4513164, at *1 (Ky. Ct. App. Aug. 23, 2013) ("[P]ursuant to KRS 413.140(1)(a), a one-year statute of limitations is in effect for constitutional claims presented in Kentucky courts that are analogous to 42 U.S.C. § 1983."); *Draper-El v. Dep't of Corr.*, No. 2011-CA-000599-MR, 2012 WL 2603863, at *2 (Ky. Ct. App. July 6, 2012); *Ferry v. Kentucky Cabinet for Health & Fam. Servs.*, No. 3:17-CV-00525-TBR, 2018 WL 701287, at *3 (W.D. Ky. Feb. 2, 2018); *Bruederle v. Louisville Metro Gov't*, No. 3:05-CV-818-S, 2007 WL 2462630, at *4 (W.D. Ky. Aug. 27, 2007).

Waste Services does not object to the Defendants' argument that any constitutional claim based on the 2017 Kane Zoning Letter is time barred. Instead, in its response, Waste Services focuses on the 2020 SWMP Amendment, stating that all of its claims are based on the amendment. It explains that the 2020 SWMP Amendment, not the 2017 Kane Letter, is the basis for its claims because the amendment "precluded the possibility that the Landfill operations could continue, regardless of whether the [2017 Kane Zoning Letter] related to the expansion was proper or whether [Waste Services'] permit should have been modified." (DE 43, Response at 7.)

Thus, the state and federal due process and takings claims against the Planning Commission and Kane must be dismissed because there is no allegation that either of those defendants effected the 2020 SWMP Amendment or had any authority to do so. The complaint alleges that it was the County that effected the 2020 SWMP Amendment. (DE 1, Complaint, ¶¶ 73-76, 89-92.) Accordingly, the Court will dismiss the state and federal due process and takings claims against the Planning Commission and Kane.

### C.  The State and Federal Due Process Claims against all Defendants

Moreover, Waste Service's due process claims against all Defendants must be dismissed because Waste Services has not established a property interest protected under the Due Process Clause. To succeed on its due process claims, Waste Services must establish that a "life, liberty, or property" interest is implicated by the government's conduct. *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)).

For due process purposes, "(t)o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Constitutionally protected property interests are not created by the Constitution itself but rather by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

"[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir.2002). Thus, in order to establish a constitutionally protected property interest in expanding the capacity of the landfill, Waste Services "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the (Defendants) to rescind the benefit." *Id*. at 410.

14

In its response brief, Waste Services does not address whether it has a property interest for purposes of the Due Process Clause. It addresses whether it has asserted a property interest only for purposes of its takings claim. (DE 43, Response at 10-13.) The property interest analysis is not the same for due process and takings claims. *See Andrews, Tr. of Gloria M. Andres Tr. Dated April 23, 1998 v. City of Mentor, Ohio*, 11 F. 4th 462, 469 (6th Cir. 2021). The Sixth Circuit has pointed out that a plaintiff may have a valid claim under the Takings Clause even though that plaintiff's due process claim fails for lack of a protected property interest. *Id*. (citing *Loreto Development Co. v. Village of Chardon*, 149 F. 3d 1183, 1998 WL 320981, at \*3-4 (6th Cir. 1998)).

By statute, no person can operate or expand a landfill in Kentucky without a permit issued by the state. Ky. Rev. Stat. §§ 224.40-305; 224.40-310; 224.40-315. Waste Services does not challenge these statutes. It points to no statute, policy, law, or mutually explicit understanding that confers it the right to expand the capacity of the landfill or that limits the discretion of the Defendants to deny it the ability to do so. Thus, the Court cannot find that it has a property right in expanding the landfill capacity, at least for due process purposes.

Waste Services' permit to operate a landfill on the original tract may well have granted it a property interest in operating a landfill to the permitted capacity on the original site. *See Brookpark Ent., Inc. v. Taft*, 951 F.2d 710, 716 & n.4 (6th Cir. 1991) (holding that the *holder* of an Ohio liquor license has a property interest protected under the Due Process Clause and distinguishing that from a first-time *applicant* for the license); *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 469 (6th Cir. 2008) ("This Court has held that the holder of a building or zoning permit has a constitutionally protected interest [for due process purposes] and is therefore entitled to proper proceedings prior to a final determination regarding revocation.")

Waste Services does not allege, however, that the Defendants interfered with any interest granted under the initial permit, and it explicitly denies that its property interest stems from that permit. (DE 43, Response at 12.) Waste Services alleges that it operated the landfill to the capacity allowed under the initial permit. It purchased the landfill in 1999 from the city of Georgetown. At that time, the city was operating the landfill pursuant to Solid Waste Management Permit No. 105-00006 (DE 1-1, Purchase Agreement, Recitals A.) The permit authorized the disposal of 3.67 million tons of solid waste at the landfill (DE 1, Complaint, ¶ 33), of which 2.9 million tons of capacity remained at the time that Waste Services purchased the landfill. (DE 1, Complaint, ¶ 34; DE 1-2, Original Host Agreement, § 2(c)).

Waste Services operated the landfill pursuant to this initial permit for more than 20 years. It had to cease operations under the initial permit, not because of any actions by the Defendants, but because it reached the permitted capacity. Waste Services alleged in its Complaint that it would exhaust the permitted capacity in December 2020. (DE 1, Complaint, ¶ 96.) In their response brief, Waste Services asserts that it did not cease operations under the initial permit until October 31, 2021. (DE 43, Response at 2.)[3] That was when it reached the permitted capacity.

Waste Services' complaint is not that the Defendants interfered with its ability to operate the landfill to the capacity permitted under the initial permit. Its complaint is that the Defendants interfered with its ability to expand the capacity of the landfill beyond the 3.67 million tons allowed under the initial permit.

---

[3] In its response brief, Waste Services discusses the costs it has incurred to perform certain activities to close the landfill. It explains, however, that these closing procedures are mandated for all landfills. *See, e.g.,* 401 KAR 47:190 §4; 48:070, §15; 48:090, §14.  (DE 43, Response at 4, n.1.) Thus, Waste Services would eventually have to incur these costs even if it had been permitted to expand the landfill.

16

Waste Services could demonstrate a property interest in expanding the capacity of the landfill protected by the Due Process Clause if it could show that the state and local authorities did not have discretion to deny it a permit to expand if it met certain minimum mandatory requirements. *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). Waste Services does not allege or even argue this. It does not argue that it has a property interest under the Due Process Clause at all. Accordingly, the Court will dismiss all of Waste Services' state and federal due process claims for failure to establish a protected property interest.

### D.  The State and Federal Takings Claims against All Defendants

The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use "without just compensation."  The primary purpose of the clause is to prevent the government from taking property from individuals for public use, thereby "forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) (quotations and citation omitted); *Waste Mgmt. Inc. of Tenn. v. Metropolitan Govt. of Nashville and Davidson Cty.*, 130 F.3d 731, 737 (6th Cir. 1997) ("The primary purpose of the Takings Clause is to prevent the government from requiring certain individuals to bear burdens which should be borne by society as a whole.")

To survive a motion seeking the dismissal of a Fifth Amendment takings claim, the plaintiff must sufficiently allege that (1) the plaintiff possessed a cognizable "property interest" and (2) a "taking" of such property interest occurred. *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir.2004); *see also Prater v. City of Burnside*, 289 F.3d 417, 425-27 (6th Cir.2002).

To determine whether Waste Services has alleged a property interest for purposes of the Takings Clause, it is first necessary to delineate the relevant land and the way Waste Services proposed to use it to expand the landfill.

This case involves two tracts of land. The first is the original landfill tract of 102.8 acres. Under the initial permit, only 46.8 acres of this tract were actively used to dispose of waste. (DE 1, Complaint, ¶ 18; DE 35-1, *Waste Services of the Bluegrass, LLC, et al. v. Scott County Board of Adjustments, et al.*, 2018-CA-001225 (Ky. Ct. App. Opinion dated April 23, 2021 at 6). Waste Services operated a landfill on that tract for over 20 years to the capacity allowed under the initial permit. The second tract of land at issue is the 500-acre adjoining tract, which Waste Services purchased in 2010 with the intent to expand capacity of the landfill beyond that allowed under the initial permit. (DE 1, Complaint, ¶ 35.)

As to how Waste Services proposed to use these two tracts to expand the landfill capacity, it proposed that the 500-acre tract would be used for activities that supported the landfill expansion on the original landfill tract. Under this plan, the landfill would be expanded on the original tract to occupy the entire 102.8 acres. No waste would actually be disposed of on the 500-acre tract. (DE 35-1, *Waste Services of the Bluegrass, LLC, et al. v. Scott County Board of Adjustments, et al.*, 2018-CA-001225 (Ky. Ct. App. Opinion dated April 23, 2021 at 6). Instead, it would be used as a "'borrow' source for dirt, as a site for sedimentation ponds, and as a buffer zone between the Landfill and adjoining properties." *Id*. This expansion was thwarted by the 2017 Kane Zoning Letter that determined that the proposed activities would not comply with the zoning laws because the property was zoned agricultural. (DE 1, Complaint, ¶ ¶ 62, 63.)  As a result of the 2017 Kane Zoning Letter, the Cabinet issued a Notice of Deficiency on the expansion permit application. (DE 1, Complaint, ¶ 66.)

18

The second expansion scenario involved expanding the landfill on the original 102.8 acre-tract beyond the 46.8 acres of the tract that Waste Services had used for solid waste disposal. (DE 1, Complaint, ¶ 86.) This expansion did not involve the 500-acre tract. It required modifications to Waste Services' existing permit that would have provided Waste Services with 8 to 20 months of "additional airspace to dispose of municipal solid waste." (DE 1, Complaint, ¶ ¶ 86-87.) Waste Services applied for these permit modifications on June 1, 2020. (DE 1, Complaint, ¶¶ 86-87.) It was later that month that the County approved of the 2020 SWMP Amendment that prohibited any additional solid waste disposal in the County. (DE 1, Complaint, ¶ 91.) Thus, Waste Services alleges, it was the 2020 SWMP Amendment that prohibited the expansion of the landfill on the original tract. (DE 1, Complaint, ¶ 95; DE 43, Response at 2, 3, 14.)

As discussed, the analysis of whether a constitutionally protected property interest exists is different for due process and takings claims. *Andrews*, 11 F.4th at 468-70. For example, the "discretionary benefit" theory applicable in the due process context does not apply to a takings claim. *Id*. Under that theory, a party does not have a protected property interest for due process purposes "when the state's decision to award or withhold the benefit is wholly discretionary." *Id*. at 468.

For takings claims, however, the fact that the Cabinet had discretion to deny the permit application to allow for expanded capacity does not necessarily mean that Waste Services did not have a property interest in expanding the capacity of the landfill. Nor does the fact that the Planning Commission had discretion to deny the request for a zoning certification or that the County had discretion to amend the SWMP. In fact, "courts routinely consider takings claims . . . that arise from a local authority's denial of rezoning, variances, or land-use permits." *Id*. at 469.

Waste Services cannot, however, establish a property interest for takings purposes by simply showing that it owns the property on which the landfill and any expansion would operate. *Id*. at 470. Instead, Waste Services must establish that the right to expand the landfill was part of the "bundle of rights" it acquired when it took title to the property at issue. *Id*. (discussing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992)). This bundle includes basic property rights like the "rights to possess, to use, to exclude, to profit, and to dispose." *Id*. (quoting *Brotherton v. Cleveland*, 923 F.2d 477, 481 (6th Cir. 1991)).

But the right to use the land in certain ways may not be part of the landowner's bundle of property rights. *Id*. at 470-71. For example, a person does not have the right to use her land in a way that would causing flooding on neighboring lands or to build a nuclear generating plant if the property sits on an earthquake fault. *Id*. (citing *Lucas*, 505 U.S. at 1029).

Determining whether a particular land-use right is included in the title to land turns "upon an analysis of what [restrictions] the 'background principles of the State's law of property and nuisance already place on land ownership.'" *Id*. at 470 (quoting *Lucas*, 505 U.S. at 1029). The question is whether the government action at issue simply prohibited the landowner from doing something that the government could have prohibited anyway under state property and nuisance laws. *Id*. at 470 (citing *Lucas*, 505 U.S. at 1029). If so, then the use at issue was not part of the property rights the landowner acquired. Pursuant to *Lucas* and *Andrews*, the burden is on the government, to "identify background principles of nuisance and property law that prohibit the uses [the landowner] now intends in the circumstances in which the property is presently found," just "as [the government] would be required to do if it sought to restrain [landowner] in a common-law action for public nuisance." *Id*. at 471 (quoting *Lucas*, 505 U.S. at 1031).

20

As to whether Waste Services has made sufficient allegations to establish a property interest for takings purposes to expand the landfill onto the 500-acre tract, Waste Services does not dispute that the tract was zoned agricultural when Waste Services purchased it or that Waste Services' proposed use of it would require the property to be rezoned. Moreover, this issue has been finally determined by the Kentucky state courts. The Kentucky Court of Appeals affirmed the Scott County Circuit Court's determination that Waste Services' proposed use of the 500-acre tract was not agricultural and that Waste Services' proposed use of the tract would require rezoning. *Waste Services of the Bluegrass, LLC, et al. v. Scott County Board of Adjustment*, et al., No. 2018-CA-1225 (Ky. Ct. App. Opinion dated April 23, 2021). The appellate court determined that "the 500-acre tract is zoned A-1 Agricultural, and it is clear the intended uses of the tract are prohibited in an A-1 zone." *Id*. at 21. That decision is final. Thus, the county could have prohibited the landfill expansion onto the 500-acre tract even without the 2020 SWMP Amendment.

It is true that, even regulations in effect at the time the landowner purchased the land are not necessarily part of the background principles of nuisance or property law for purposes of a takings claim if the landowner challenges those regulations. The Supreme Court has rejected a "blanket rule that 'a purchaser or a successive title holder. . . is deemed to have notice of an earlier-enacted restriction and is barred from claiming that it effects a taking.'" *Andrews,* 11 F.4th at 472 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 626 (2001)). This is because the Takings Clause "allows a landowner to assert that a particular exercise of the State's regulatory power is so unreasonable or onerous as to compel compensation." *Palazzolo*, 533 U.S. at 627. Thus, even those who buy property subject to a restriction have a right to challenge the restriction as an unreasonable limitation on the use and value of land. *Id*. *Palazzolo* made clear that, just by virtue of its

enactment, every regulation does not become "a background principle of property law which cannot be challenged by those who acquire title after the enactment." *Id*. at 629.

This means that, if Waste Services were challenging the zoning ordinance that designated the 500-acre tract as agricultural, then perhaps the ordinance would not be considered a background principle of property law that would determine whether Waste Services had a property interest for takings purposes in expanding the landfill onto the 500-acre tract. Waste Services does not, however, challenge the zoning ordinance. Waste Services does not dispute that the tract is zoned agriculture, nor does it challenge the zoning ordinance as an unreasonable limitation on its use of the land. Waste Services explicitly states that it is not seeking to relitigate the Kentucky Court of Appeals' decision affirming that the 500-acre tract is zoned agricultural and that Waste Services' proposed use of it was not agricultural. (DE 43, Response at 2.)

Thus, the ordinance is necessarily a background principle of property law that the Court must consider in determining whether Waste Services has asserted a property interest for takings purposes in expanding the landfill onto the 500-acre tract. Because the county could have prohibited the expansion of the landfill operations onto the 500-acre tract by way of the zoning ordinance even without the SWMP Amendment, Waste Services cannot be deemed to have a property interest in expanding the landfill onto this tract that was protected under the Takings Clause.

As to Waste Services' takings claim based on the governmental action that prohibited it from expanding the landfill on the original 102.8-acre tract, the zoning ordinances did not prohibit this. As discussed, with the 2013 Smith Zoning Certification, Earl Smith, the director of the Planning Commission before Kane, stated that the expansion of the landfill "within the current property boundary" was consistent with the county zoning ordinances. (DE 1-5, Smith Zoning

22

Certification.) The 2017 Kane Zoning Letter did not change that determination. Thus, it was not the local zoning ordinances but the 2020 SWMP Amendment – which ceased continued solid waste disposal in the county beyond that currently permitted – that prohibited Waste Services from expanding the landfill on the original tract.

The Defendants do not point to any background principle of state property or nuisance law other than the 2020 SWMP Amendment that would have prohibited Waste Services from expanding the landfill on the original tract. Accordingly, the Court will assume for purposes of this opinion that Waste Services had a property right in expanding the landfill on the original tract that is protected by the Takings Clause.

This is in line with the Court of Federal Claims' decision in *Resource Investments, Inc. v. United States*, 85 Fed. Cl. 447 (Fed. Cl. 2009), a case that Waste Services cites. In that case, the county contracted with the plaintiffs to build a solid-waste disposal facility on land the plaintiffs purchased specifically for that purpose. The construction was thwarted when the U.S. Army Corps of Engineers wrongfully asserted jurisdiction over the site and required plaintiffs to obtain a permit under section 404 of the Clean Water Act to construct the landfill. When a court ruled that the Corp's assertion of jurisdiction was in error, the plaintiffs sued the Corps alleging that the delay in construction caused by the Corps' assertions of jurisdiction constituted a temporary regulatory taking.

That case was before the court on summary judgment, which allowed the court to consider evidence. But it is nonetheless instructive for determining the kinds of allegations that suffice for alleging a property interest in the construction of a landfill for takings purposes.

As a "starting point," the court looked at the property title and conclude that there was "no evidence that either plaintiff acquired a property interest specifically excluding the right to

23

construct and operate a solid waste landfill." *Id*. at 478-79. The court was also able to consider whether "the particulars of plaintiffs' proposed use created a nuisance under Washington State common law," meaning that plaintiffs could not have "a valid use interest in creating and/or operating their landfill." *Id*. at 479. In finding that the proposed use would not create a nuisance that the state could prohibit, the Court noted that the county "hearing examiner found that plaintiffs' proposed solid waste landfill lacked adverse impact from noise, and groundwater and surface water, and did not qualify under the statutory definition of a nuisance." *Id*. (citations to record omitted).

This matter, in contrast, is before this Court on a motion to dismiss. This means that, instead of considering evidence, the court must take all factual allegations in Waste Services' complaint as true and must draw all reasonable inferences in its favor. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Waste Services alleges that the 2020 SWMP Amendment prohibited it from expanding the landfill on the original landfill tract. The Defendants have failed to point to any background principles of state property or nuisance law other than the 2020 SWMP Amendment that would have prohibited the expansion on the original tract. Thus, for purposes of this motion, the Court will assume that Waste Services has a property interest in expanding the landfill on the original tract.

The next issue is whether the 2020 SWMP Amendment is a "taking." There are a couple of kinds of government actions that can constitute a taking. First is the "direct government appropriation or physical invasion of private property." *Andrews*, 11 F.4th at 468 (citation omitted). Second, are takings committed by land-use regulations. A "total regulatory taking" occurs where a land-use regulation deprives the land of all economically beneficial use, leaving

the land economically idle. *Id*. Even if a land-use regulation allows for "some economically beneficial use" of the affected property, however, it can still be deemed a partial taking. *Id*. This depends on an analysis of several factors first articulated in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). These factors are 1) the economic impact of the regulation on the claimant; 2) the extent to which the regulation has interfered with investment-backed expectations; and 3) the character of the government action. *Andrews*, 11 F. 4th at 468 (citing *Penn Central*, 438 U.S. at 124.)

Waste Services' claim that the 2020 SWMP Amendment effected a taking of its property interest is a regulatory takings claim. In its complaint, Waste Services does not explicitly state whether it asserts a total or partial regulatory taking, but it does assert that the value of the landfill tract is zero. (DE 1, Complaint, ¶ 111.) In its response, Waste Services clarifies that it claims the 2020 SWMP Amendment effected a "total regulatory taking" of its property interest in the original 102.8-acre landfill tract. (DE 43, Response at 13.) It argues that "the 2020 SWMP Amendment constituted a total regulatory taking of the property on which the Landfill sits because the action stripped the Landfill property of millions of dollars in value, leaving it for purposes of this analysis, worthless." (DE 43, Response at 14.)

The Defendants argue that the 2020 SWMP Amendment could not constitute a total regulatory taking of Waste Services' interest in the original landfill tract because, even after the 2020 SWMP Amendment, Waste Services was able to continue operating a landfill on the original tract. In the complaint, Waste Services alleges that the 2020 SWMP Amendment would force the landfill to cease operations "when it reaches its current permitted capacity." (DE 1, Complaint, ¶ 95.) Waste Services alleged that the County amended the SWMP in June 2020, but that the landfill would not

reach the permitted capacity until December 2020. (DE 1, Complaint, ¶ 96.) In its response, Waste Services asserts that it closed the landfill on October 31, 2021. (DE 43, Response at 6.)

This is not a total regulatory taking. The 2020 SWMP Amendment did not deprive the land of "all economically beneficial" use or leave the land "economically idle." *Andrews*, 11 F.4th at 468. The amendment had no effect at all on Waste Services' ability to continue operating the landfill pursuant to the initial permit, and Waste Services continued operating the landfill on the original tract for more than a year after the 2020 SWMP Amendment. Thus, Waste Services has not sufficiently alleged a total regulatory taking of its interest in the landfill.

But even if Waste Services' allegation that the property value dropped to zero after landfill operations ceased were sufficient to allege a total regulatory taking, the claim still fails. This is because the 2020 SWMP Amendment would not be the cause for the decrease in land value.[4] Instead, the cessation of the landfill operation would be. The Court recognizes that Waste Services alleges that the 2020 SWMP Amendment caused the cessation of landfill operations, but, according to the allegations in the complaint, the landfill operations were going to cease eventually regardless of the 2020 SWMP Amendment.

Waste Services alleges that, even had it been granted the requested permit to expand landfill operations on the original tract, it would only have been able to operate the landfill for 8 to 20 months beyond the time allowed under the initial permit. (DE 1, Complaint, ¶¶ 86-87.) If the value of the original landfill tract dropped to zero because the landfill operations ceased, then the value of the property would have dropped to zero 8 to 20 months after the landfill reached the capacity

---

[4] Waste Services does not explicitly address what the value of the original landfill tract was prior to the 2020 SWMP Amendment. It alleges the value of the "Landfill" and the 500-acre tract together was about $100,000,000 but now the value of both is "close to zero." (DE 1, Complaint, ¶ 111.)

under the initial permit even without the 2020 SWMP Amendment. Thus, the 2020 SWMP Amendment could not be the cause of the land value dropping to zero.

"The relevant question in determining causation is whether the challenged governmental action was the direct and proximate cause of the plaintiff's alleged injuries." *Mildenberger v. United States*, 91 Fed. Cl. 217, 259 (Fed. Cl. 2010), *aff'd in part*, 643 F.3d 938 (Fed. Cir. 2011). "If the alleged damage would have occurred even in the absence of the challenged governmental action, then the causation requirement has not been met." *Id*.; *see also St. Bernard Par. Gov't v. United States*, 887 F.3d 1354, 1362 (Fed. Cir. 2018) ("In order to establish causation, a plaintiff must show that in the ordinary course of events, absent government action, plaintiffs would not have suffered the injury.") The value of the original landfill tract would eventually be zero even if the 2020 SWMP Amendment had never occurred and Waste Services had been permitted to expand capacity on the tract. Accordingly, Waste Services has failed to sufficiently allege that the 2020 SWMP Amendment caused a total regulatory taking of the 102.8-acre tract.

Waste Services does not argue that the 2020 SWMP Amendment would be considered a partial taking of its expansion rights under the *Penn Central* factors. Any such claim would also fail. As to the first *Penn Central* factor – the economic impact of the regulation – it can be fairly inferred from the complaint that Waste Services alleges the 2020 SWMP Amendment prohibited it from operating the landfill on the original tract for 8 to 20 months beyond the time allowed under the initial permit. (DE 1, Complaint, ¶¶ 86-87.) As to the second factor, however, the complaint does not allege that regulation has interfered with any investment-backed expectations. Waste Services does not allege that it invested any sums with the expectation that it would be permitted to continue landfill operations on the original tract for 8 to 20 months after the initial permit expired.

Accordingly, Waste Services has not alleged a taking of its right to operate the landfill for 8 to 20 months after it reached capacity under the initial permit.

For all these reasons, the Court will dismiss Waste Services' takings claims under the state and federal constitutions.

### E.  *Monell* claims

The Supreme Court established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that municipalities may be subject to liability under 42 U.S.C. § 1983, but only for deprivation of federally protected rights carried out in accordance with an official policy or custom. *Id*. at 694; *Novak v. City of Parma, Ohio,* 33 F.4th 296, 309 (6th Cir. 2022), *cert. denied sub nom. Novak v. Parma, OH*, No. 22-293, 2023 WL 2123743 (U.S. Feb. 21, 2023). Waste Services asserts *Monell* claims against Scott County, Judge/Executive Covington, the Georgetown Scott County Planning Commission, and Director Kane.

The *Monell* claims must be dismissed because the Court has dismissed all alleged constitutional claims. "(T)here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *Przybysz v. City of Toledo*, 746 F. App'x 480, 484 (6th Cir. 2018) ("As a threshold matter, there can be no municipal liability under *Monell* when there is no constitutional violation").

Moreover, *Monell* policy-and-custom claims are improper against individual defendants, who can be held liable for single unconstitutional acts. *See Harrison v. Woolridge*, No. 318CV00388GNSLLK, 2020 WL 3798877, at *6 & n.2 (W.D. Ky. July 7, 2020). This is because "the raison d'etre of *Monell* is to impose liability on a municipality under certain circumstances— not individuals." *Phillips v. City of Cincinnati*, No. 1:18-CV-541, 2019 WL 2289277, at *6 (S.D.

Ohio May 29, 2019). Thus, the *Monell* claims against Judge/Executive Covington and Director Kane will be dismissed.

Finally, Waste Services does not make any allegations from which it could be inferred that any Defendant had a custom, policy or practice of taking property without just compensation or violating due process rights. Waste Services alleges only that the Defendants violated Waste Services' constitutional rights. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985). Accordingly, the *Monell* claims must be dismissed against all Defendants.

### F.  § 1983 Conspiracy Claim

Waste Services asserts that the Defendants conspired to commit an unconstitutional taking of its property. (DE 1, Complaint, Count XI.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007). To state a claim for civil conspiracy under § 1983, a plaintiff must show a deprivation of an underlying constitutional right. *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). The Court has dismissed Waste Services' underlying takings claim. Accordingly, the conspiracy claim must also be dismissed.

Moreover, Waste Services has failed to plead sufficient facts to assert a § 1983 conspiracy claim. For this claim, the plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the

complainant." *Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). In addition, "conspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir.2008) (citations omitted).

Waste Services asserts the conspiracy claim against Scott County, Scott County Judge/Executive Covington, the Planning Commission, and Director Kane, and as many as 25 "John Does." (DE 1, Count XI.) As explained above, this claim against the county and the planning commission must be dismissed because the complaint does not allege that the county had a policy or custom of conspiring to take property from individuals without just compensation. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1330 (11th Cir. 2015) ("While this Court has never had occasion to hold that a conspiracy claim against a municipality must include the existence of a policy or custom underlying the conspiracy, that has to be so."); *Emmert v. Clackamas Cnty.*, No. 03:13-CV-01317-YY, 2017 WL 1946321, at *8 (D. Or. Jan. 12, 2017), *aff'd*, 765 F. App'x 229 (9th Cir. 2019) ("A conspiracy or strategy whose purpose is to single out a particular individual is inconsistent with the requirement that the custom or practice be pervasive or widespread."); s*ee also Monell*, 436 U.S. at 691 ("(T)he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.")

As to Judge/Executive Covington and Planning Commission Director Kane and the various John Does, Waste Services has not pleaded sufficient facts to support a reasonable inference that there was a single plan among all of these individuals to cause a taking of its property without just compensation. Waste Services alleges that Director Kane wrote the 2017 Kane Zoning Letter

because he was "kowtowing" to pressure directed at him individually from members of the public upset about the landfill. (DE 1, Complaint, ¶ 61.) Waste Services does not allege, however, that Director Kane either expressly or implicitly agreed with these individuals to close the landfill without just compensation or that he and these individuals agreed on a single plan. Waste Services does not allege that Director Kane directly communicated with any of these individuals at all. It alleges only that he acted in response to public pressure, which included threatening letters to him. (DE 1, Complaint, ¶ 57.)

As to Judge/Executive Covington, Waste Services alleges that he "led much of the attempt to deprive [Waste Services] of the right to continue operation of the Landfill." (DE 1, Complaint, ¶ 83.) His alleged actions include causing the 2020 SWMP Amendment. (DE 1, Complaint, ¶¶ 92-93.) Waste Services does not make allegations that would support a reasonable inference, however, that Judge/Executive Covington took that action as part of a single plan with Director Kane or any John Does to take Waste Services' property without just compensation. Waste Services does not allege that Judge/Executive Covington had any communications with any other individuals about the landfill expansion at all.

Accordingly, the Section 1983 conspiracy claim must be dismissed.

### G. Breach of Contract Claims against Scott County

For its breach of contract claims against Scott County, Waste Services asserts that Scott County breached two agreements: one which it refers to as the Original Host Agreement and another which it refers to as the Host Community Agreement. (DE 1, Complaint, Count VII.)[5]

---

[5] The Court has decided to exercise jurisdiction over all the state-law claims in this action. Although state claims should generally be dismissed where all federal claims have been dismissed before trial, "(a) district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.1993). As set forth above, the parties to this case have already been involved in multiple state court and

The parties to the Original Host Agreement were the city of Georgetown, Scott County, and Waste Services of the Bluegrass, Inc. (DE 1-2, Original Host Agreement.) The Defendants do not dispute, however, that Waste Services of the Bluegrass, LLC has standing to bring a claim for breach of this agreement. The parties to the Host Community Agreement (DE 1-9, Host Community Agreement) were plaintiff Waste Services of the Bluegrass, LLC and Scott County.

Plaintiff Waste Services Realty, LLC is not a party to either agreement. The Defendants argue that it does not have standing to bring claims for breach of the agreements. "[O]rdinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute or, under certain circumstances, by a third-party beneficiary." *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (quoting 17A Am. Jur. 2d, Contracts § 425 (1991)). Waste Services does not respond to the argument that Waste Services Realty, LLC has no standing to bring the breach-of-contract claims. In its response, Waste Services refers to the breach-of-contract claims as only "WSB's [Waste Services of the Bluegrass, LLC's] claims." (DE 43, Response at 22.) Accordingly, the Court will dismiss Waste Services Realty, LLC's breach-of-contract claims against the county to the extent such claims were asserted in the complaint.

In its complaint, Waste Services alleged that the county breached the Original Host Agreement by failing to comply with its obligation "to amend its [SWMP] to include the Landfill, including

administrative proceedings. Exercising jurisdiction over all the claims in this action will avoid yet more litigation in more state venues, saving the parties time and expense as well as court resources. Further, the state constitutional claims are essentially the same as their federal counterparts. Thus, it makes sense for one court to handle all of the constitutional claims. None of the breach-of-contract claims involves novel or complex issues of state law. Moreover, this case was not removed from state court. Waste Services chose this federal forum to resolve all of its claims.

expansions of the Landfill." (DE 1, Complaint, ¶ 166.) The complaint also alleged that the Defendants breached both agreements by claiming that the agreements are invalid, thereby repudiating them. (DE 1, Complaint, ¶ 167.) Finally, the complaint alleged that the county breached the implied covenant of good faith and fair dealing in both agreements. (DE 1, Complaint, ¶ 169.)

In its response to the motion to dismiss, however, Waste Services no longer argues that the county breached any obligation to amend the SWMP to include the landfill or any expansion of the landfill. It points to no particular provisions of the agreements that it alleges the county breached. Waste Services addresses only its breach-of-contract claims for anticipatory repudiation and breach of the implied covenant of good faith and fair dealing. Thus, Waste Services has abandoned the claim that the county breached its obligation to amend the SWMP to include the landfill.

Even if Waste Services had not abandoned the claim, however, it must still be dismissed. The County's obligations under the Original Host Agreement are set forth in Section 4 of the agreement. There are only two. The county promised 1) to "enact no ordinance establishing a user's fee pursuant to KRS 68.178"; and 2) to "amend Scott County's current Area Solid Waste Management Plan to include the City of Georgetown Landfill (Permit Number 105-00006)." (DE 1-2, Host Community Agreement, § 4).

In its complaint, Waste Services alleges that Scott County breached only the second of these obligations. (DE 1, Complaint, ¶ 166.)[6] But Waste Services does not make any allegations from

---

[6] In its Complaint, Waste Services also asserts that the Original Host Agreement was superseded by the Host Community Agreement. (DE 1, Complaint, ¶ 48.) The Host Community Agreement explicitly states that it is the "entire agreement and understanding between the parties with respect to the subject matter hereof" and that it supersedes any prior agreement or understanding "relating to the subject matter hereof, including the Original Host Agreement, as amended." (DE 1-9, Host Community Agreement, § D(9).) In their arguments regarding the breach-of-

which it could be inferred that the county failed to amend the then current SWMP to include the landfill that was operating under Permit Number 105-00006. To the contrary, Waste Services alleges that it operated the landfill for more than 20 years after the purchase pursuant to both that initial permit and the Scott County SWMP. The agreement does not require the county to amend the SWMP to include anything other than the landfill operating under that initial permit.

As to Waste Services' claim for breach of the covenant of good faith and fair dealing, "[w]ithin every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). For this claim, a plaintiff must allege that "the party alleged to have acted in bad faith . . . engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *O'Kentucky Rose B. Ltd. P'Ship v. Burns*, 147 Fed. Appx. 451, 458 (6th Cir. 2005).

Waste Services does not need to show that the county breached any specific provision of the Original Host Agreement or the Host Community Agreement to succeed under an implied duty of good faith and fair dealing theory, but it must point to some action or inaction on the Defendants' part that kept Waste Services from reaping the fruits of its bargain. *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, No. 5:14-CV-00182, 2015 WL 5611655, at *3 (W.D. Ky. Sept. 23, 2015) (citing *Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 445 (6th Cir. 2014)*, aff'd*, 761 F. App'x 456 (6th Cir. 2019).

Waste Services asserts in its complaint that the county frustrated its efforts to expand the landfill (DE 1, Complaint, ¶ 169), but it points to no provision in either agreement that either

---

contract claims, however, the parties do not discuss whether the Original Host Agreement was superseded or the effect of §D(9) of the Host Community Agreement. Accordingly, the Court will not address that issue in this opinion.

explicitly or implicitly granted it the right to expand the landfill. In its response to the motion to dismiss, Waste Services makes the conclusory assertion that the county breached the covenant of good faith and fair dealing by "failing to uphold [the county's] contractual obligations." (DE 43, Response at 22.) Waste Services points to no contractual obligation that Waste Services failed to uphold.

Accordingly, the Court must dismiss the claim that the county breached the implied covenant of good faith and fair dealing contained in the Original Host Agreement and the Host Community Agreement.

As to the claim for anticipatory repudiation, Waste Services asserts in its complaint that, by asserting that the Original Host Agreement and Host Community Agreement are invalid, the county has anticipatorily breached the agreements. (DE 1, Complaint, ¶ 167.) An anticipatory breach is "the unequivocal repudiation or renunciation of an executory contract in advance of the time of performance." *Fid. & Deposit Co. of Maryland v. Brown*, 20 S.W.2d 284, 286 (1929). The importance of the doctrine is that it allows a party to file an immediate action for breach of contract "without waiting for the time of performance to arrive, if the injured party so elects." *Id.* In its complaint, Waste Services does not cite any performance required by the agreement that the county will fail to perform. In its response, Waste Services argues only that the Court should allow discovery on this claim. Before doing so, however, the Court must ensure that Waste Services has made sufficient allegations to state a plausible claim for anticipatory repudiation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Waste Services has failed to do so. Accordingly, this claim must also be dismissed.

### H.   Declaratory Judgment Action

Finally, Waste Services seeks a declaratory judgment regarding the parties' rights under the Host Community Agreement. Waste Services alleges that Scott County has asserted that the agreement is invalid, but that Waste Services still claims fees due under the agreement. The Court assumes that Waste Services pursues this claim under the Declaratory Judgment Act, which provides that, "(i)n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

A declaratory judgment is a remedy, however, not an independent claim. *See, e.g., Cruz v. Capital One, N.A*., 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016); *Acrisure, LLC v. Hudak*, No. 1:22-CV-17, 2022 WL 3025533, at *5 (W.D. Mich. Aug. 1, 2022). "[A] declaratory judgment action is a procedural device used to vindicate substantive rights." *Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth*., 108 F.3d 658, 668 (6th Cir. 1997) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992)). Thus, in order to be entitled to declaratory judgment, a plaintiff "must first succeed on a cognizable cause of action." *Hancock v. Miller*, No. 2:19-CV-00060, 2020 WL 1493609, at *22 (M.D. Tenn. Mar. 27, 2020) (quoting *Duncan v. Tenn. Valley Auth. Ret. Sys.*, 123 F. Supp. 3d 972, 982 (M.D. Tenn. 2015), *aff'd*, 852 F. App'x 914 (6th Cir. 2021). *See also Days Inn Worldwide, Inc. v. Sai Baba, Inc.*, 300 F. Supp.2d 583, 592-593 (N.D. Ohio 2004), ("A request for declaratory judgment must accompany the substantive claim for which declaratory judgment is sought.") Plaintiffs must link their request for declaratory judgment "to an underlying substantive claim for relief." *Id*.

Here, Waste Services' request for declaratory relief fails because the companion claim for breach of contract fails.

36

### III.     Conclusion

For all these reasons, the Court hereby ORDERS that the Defendants' motion to dismiss

(DE 40) is GRANTED and all claims asserted by Waste Services are DISMISSED.

March 31, 2023

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

37