UNTED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **WASTE SERVICES OF THE BLUEGRASS, LLC** and **WASTE SERVICES REALTY, LLC,** | **CIVIL ACTION NO. 5:20-410-KKC** |
| **Plaintiffs,** | |
| **V.** | **OPINION AND ORDER** |
| **CITY OF GEORGETOWN, KENTUCKY**; **TOM PRATHER,** *individually and in his official capacity as Mayor*; **SCOTT COUNTY, KENTUCKY FISCAL COURT; JOE PAT COVINGTON,** *individually and in his official capacity as Scott County Judge/Executive*; **GEORGETOWN-SCOTT COUNTY PLANNING COMMISSION; JOE KANE***, individually and in his official capacity as Director of the Georgetown-Scott County Planning Commission*; **COMMONWEALTH OF KENTUCKY, ENERGY AND ENVIRONMENT CABINET;** and **JOHN DOES 1-25.** | |
| **Defendants.** | |

\*\*\*\*\*\*\*\*\*

This matter is before the Court on the plaintiffs' motion (DE 49) asking the Court to alter, amend or reconsider its opinion dated March 31, 2023, which dismissed the remaining claims in this action. For the following reasons, the Court will grant the motion in part.

I.      **Background**

The Court explained the facts and history relevant to this motion in extensive detail in the Court's prior opinions on the motions to dismiss. The first of those opinions was dated April 16, 2021 (DE 28). The second of those opinions is the March 31, 2023 opinion (DE 47) now under

reconsideration. Waste Services does not dispute any factual findings in those opinions except one that will be discussed below.

In brief, the plaintiffs (together, "Waste Services") own a landfill and adjoining property located in Scott County, Kentucky. Waste Services operated the landfill for about 20 years to the capacity allowed under its original permit issued by the state. That capacity was 3.67 million tons of solid waste.

In 1999, the county amended its Solid Waste Management Plan ("SWMP") to increase the amount of waste disposal allowed in the county to 9.67 million tons. Waste Services had still not reached the 3.67 million tons of capacity allowed under the initial permit. Thus, it continued operating the landfill under that initial permit. Two decades later, however, the county again amended its SWMP to prohibit any further waste disposal in the county beyond that already permitted. This meant that, instead of expanding the capacity of the landfill, Waste Services would have to cease operating the landfill after it reached the capacity of 3.67 million tons allowed under the initial permit. (DE 1, Complaint, ¶¶ 1, 2, 111.)

Waste Services filed this action asserting multiple claims against multiple defendants. With the April 16, 2021 and March 31, 2023 opinions, the Court dismissed all of Waste Services' claims. Most relevant to this motion are Waste Services' takings claim and due process claims against the Scott County Fiscal Court and the Scott County judge/executive.

Waste Services ask the Court to reconsider just two items, both of which were in the Court's March 31, 2023 opinion. First, Waste Services objects to the Court's finding that Waste Services alleged in its complaint that, under certain landfill expansions that Waste Services proposed, the landfill would have closed 8 to 20 months after it reached the capacity allowed under the original permit regardless of the Defendants' actions. Second, Waste Services objects to the Court's conclusion that Waste Services has not sufficiently alleged a property interest that

is protected by the Due Process Clause.

A court may grant a timely Rule 59 motion to alter or amend a judgment to correct a clear error of law; to account for newly discovered evidence or an intervening change in the controlling law; or to otherwise prevent manifest injustice. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). A plaintiff cannot use a Rule 59 motion "to raise arguments which could, and should, have been made before judgment issued." *Id.* (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).

## II.     The Takings Claim

As to the Court's finding that, under certain of Waste Services' proposed expansions, the landfill would have closed within 8 to 20 months after Waste Services reached the capacity allowed under the original permit, the Court made this finding when discussing Waste Services' takings claim.

For that claim, Waste Services alleges that the Defendants' amendment of the county's Solid Waste Management Plan in 2020 (the "2020 SWMP Amendment") effected a taking of its property because the property was worth nothing after the amendment. Again, the 2020 SWMP Amendment prohibited any further disposal of waste in the county beyond that which was already permitted. Waste Services alleges that it could not obtain a permit from the state to expand the landfill capacity if the county SWMP did not allow it. Thus, Waste Services alleges, after the 2020 SWMP Amendment, it had to cease operating the landfill after it reached the capacity allowed under the initial permit.

As the Court explained in its prior opinion, to survive a motion seeking the dismissal of a Fifth Amendment takings claim, the plaintiff must sufficiently allege that (1) the plaintiff possessed a cognizable "property interest" and (2) a "taking" of such property interest occurred. *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc*., 365 F.3d 435, 481 (6th Cir.2004).

3

As to whether Waste Services has alleged a cognizable property interest, as explained in more detail in the Court's March 31, 2023 opinion, there are two tracts of land at issue. The first tract is a 102.8-acre tract that is the original landfill site. Waste Services operated the landfill on this tract for more than 20 years, until it reached the capacity allowed under the initial permit in October 2021. The second tract of land is the 500-acre adjoining tract that Waste Services purchased in 2010 with the intent to expand the landfill operation onto it.

Waste Services asserts a property interest in using each tract of land for landfill operations. In response to the motion to dismiss, Waste Services made this clear, asserting a property interest in 1) "the use of its land as it has been using [it] for the past two decades" and in 2) "the adjoining property [Waste Services] purchased in anticipation of using the property [to] support the operation of the Landfill." (DE 43, Response at 11.)

As the Court explained in its prior opinion, Waste Services cannot establish a property interest in using the two tracts as a landfill by simply showing that it owns the two tracts. *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 470 (6th Cir. 2021). Instead, Waste Services must establish that the right to operate the landfill on the two tracts was part of the "bundle of rights" it acquired when it took title to the property. *Id*. (discussing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992)).

That bundle includes basic property rights like the "rights to possess, to use, to exclude, to profit, and to dispose." *Id*. (quoting *Brotherton v. Cleveland*, 923 F.2d 477, 481 (6th Cir. 1991)). But the right to use the land in certain ways may not be part of the landowner's bundle of property rights. *Id*. at 470-71. For example, a person does not have the right to use her land in a way that would cause flooding on neighboring lands or to build a nuclear generating plant if the property sits on an earthquake fault. *Id*. at 470 (citing *Lucas*, 505 U.S. at 1029).

Determining whether a particular land-use right is included in the title to land turns "upon

4

an analysis of what [restrictions] the 'background principles of the State's law of property and nuisance already place on land ownership.'" *Id*. (quoting *Lucas*, 505 U.S. at 1029). The question is whether the government action at issue simply prohibited the landowner from doing something that the government could have prohibited anyway under state property and nuisance laws. *Id*. (citing *Lucas*, 505 U.S. at 1029). If so, then the use at issue was not part of the property rights the landowner acquired. Pursuant to *Lucas* and *Andrews*, the burden is on the government, to "identify background principles of nuisance and property law that prohibit the uses [the landowner] now intends in the circumstances in which the property is presently found," just "as [the government] would be required to do if it sought to restrain [the landowner] in a common-law action for public nuisance. . . . " *Id*. at 471 (quoting *Lucas*, 505 U.S. at 1031).

As to whether the 500-acre tract included the right to operate a landfill on it, the property is zoned agricultural, and the Kentucky state courts have decided that using it for landfill operations would require rezoning. Waste Services does not challenge the zoning ordinance. Thus, the county could have prohibited landfill operations on the 500-acre tract by way of the zoning ordinance even without the 2020 SWMP Amendment. This is why the Court determined in its March 31, 2023 opinion that Waste Services cannot be deemed to have a property interest in using the 500-acre tract as a landfill operation that is protected under the Takings Clause. Waste Services does not ask the Court to reconsider this ruling.

As to the 102.8-acre tract, however, there is no dispute that the zoning ordinances did not prohibit landfill operations on it. As explained more fully in the Court's March 31, 2023 opinion, in 2013, the then-director of the Planning Commission stated that the expansion of the landfill "within the current property boundary" (the 102.8-acre tract) was consistent with the county zoning ordinances. (DE 1-5, Smith Zoning Certification.) The Defendants never changed that determination. Waste Services alleges that it was the 2020 SWMP Amendment (which ceased

5

continued solid waste disposal in the county beyond that already permitted) that forced it to cease operations on this tract after it reached the capacity allowed under the initial permit.

The Defendants have not met their burden of pointing to any background principle of state property or nuisance law other than the 2020 SWMP Amendment that would have prohibited Waste Services from operating the landfill on the original tract. Accordingly, as it did in its prior opinion, the Court will assume for purposes of this opinion that Waste Services had a property interest that is protected by the Takings Clause in using the 102.8-acre tract to operate a landfill. *See Resource Investments, Inc. v. United States*, 85 Fed. Cl. 447, 479 (Fed. Cl. 2009) (finding a property interest in operating a landfill because 1) "plaintiffs' titles did not exclude" landfill operation, 2) "[t]hat use, in the abstract, was expressly allowed by statute, and thus not a nuisance by statutory definition, and 3) "the specifics of that proposed use [did not] constitute a nuisance or even a likelihood thereof under the background principles of Washington State's law of property and nuisance.")

The next issue is whether the Plaintiffs have sufficiently alleged a "taking" of Waste Services' property interest in using the 102.8-acre tract to operate a landfill.[1]

There are two kinds of takings. "First, there is the quintessential takings claim based on direct government appropriation or physical invasion of private property." *Andrews*, 11 F.4th at 468 (citation and quotations omitted). "When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063,

---

[1] In its motion to reconsider, Waste Services argues that the Defendants did not contest in their motion to dismiss whether Waste Services had sufficiently alleged a taking and that the Court addressed this issue "sua sponte." (DE 49, Motion to Reconsider at 4.) This is incorrect. The Defendants contested both whether Waste Services had alleged a property interest (DE 40-1, Mem. at 10-13) and whether Waste Services had sufficiently alleged a "taking." (DE 40-1, Mem. at 14- 18.)

2071 (2021). The same categorical rule applies when the government physically takes possession of private property and when it occupies private property. *Id*. These kinds of cases are clear takings and, thus, are assessed under a "simple, *per se* rule: The government must pay for what it takes." *Id*.

"Second, there are so-called 'regulatory takings,' which concern land-use regulations." *Andrews*, 11 F.4th at 468 (quoting *Lucas*, 505 U.S. at 1026-27). That regulations might go so far as to constitute a taking was only recognized by the Supreme Court in the 20th century. *Cedar Point*, 141 S.Ct. at 2071 (citing *Pennsylvania Coal Co. v. Mahon*, 43 S.Ct. 158 (1922)). Prior to that time, the Takings Clause was deemed to only apply to a direct appropriation of property by the government or the functional equivalent of a "practical ouster of the owner's possession." *Lucas*, 505 U.S. at 1014 (quotations, citations, and brackets omitted).

A taking is not necessarily classified as a "regulatory taking" simply because it is effected by a regulation. In determining whether a taking is a physical taking or a regulatory taking, "[t]he essential question is not . . . whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree). It is whether the government has physically taken property for itself or someone else – by whatever means – or has instead restricted a property owner's ability to use his own property." *Cedar Point Nursery*, 141 S.Ct. at 2072.

Waste Services alleges that the 2020 SWMP Amendment restricted its ability to use the 102.8-acre tract as a landfill after it reached the capacity allowed under the initial permit. Thus, Waste Services alleges a regulatory taking.

There are two kinds of regulatory takings: a total regulatory taking and a partial one. A "total regulatory taking" occurs "where a land-use regulation 'deprives [the] land of all economically beneficial use,' leaving the land 'economically idle.'" *Andrews*, 11 F.4th at 468

7

(quoting *Lucas*, 505 U.S. at 1019, 1026–27). Such regulations present "extraordinary circumstances" and are "relatively rare." *Lucas*, 505 U.S. at 1017-18.

Like a direct physical invasion or appropriation of property by the government, this kind of taking is subject to the categorical rule that, once the taking is found, the government must pay the property owner compensation without further analysis. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 330 (2002). Such a categorical rule for regulatory takings is "limited to 'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Id.* (quoting *Lucas*, 505 U.S. at 1017). If the regulation diminishes land value by even 95 percent, it does not effect a categorical total regulatory taking. To be considered a categorical total regulatory taking, the land value must be diminished by 100 percent. *Id. See also Fla. Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1565 (Fed. Cir. 1994) (stating that, when "a regulation prohibits less than all economically beneficial use of the land and causes at most a partial destruction of its value, the case does not come within the Supreme Court's 'categorical' taking rule.").

Where a land use regulation causes a loss of anything less than 100 percent of the property's value, compensation is not categorically required. Instead, determining whether the government must pay compensation, "necessarily entails complex factual assessments of the purposes and economic effects of government actions." *Tahoe-Sierra*, 535 U.S. at 323 (quoting *Yee v. Escondido*, 503 U.S. 519, 523 (1992)). This analysis recognizes that a land use regulation "arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id*. (citation omitted). The "complex of factors" to be analyzed includes (1) the economic impact of the regulation on the landowner; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id*. at 315 n.10.

8

These factors were articulated in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978) and, thus, are referred to as the *Penn Central* factors. Because of the extraordinary nature of a total taking occurring in the regulatory context, the "default rule" in takings cases involving land use regulations is the "more fact specific inquiry" of *Penn Central. Tahoe-Sierra*, 535 U.S. at 332; *Cedar Point Nursery*, 141 S.Ct. at 2072.

Waste Services has made clear, however, that its claim is that the 2020 SWMP Amendment effected a total regulatory taking of the 102.8-acre tract. In response to the motion to dismiss, it stated that its claim is that the 2020 SWMP Amendment "foreclosed [Waste Services'] ability to use the Landfill for its only economically viable use, rendering the property worthless." (DE 43, Response at 11); that the amendment deprived it of the "right to the economically beneficial and productive use of its land. . . ." (DE 43, Response at 11); that the "Complaint clearly alleges actions of the Defendant that meet the *Lucas* [total regulatory taking] criteria" (DE 43, Response at 12); that it "has set forth repeatedly in this action that Defendants' actions have deprived it of all economic use of its Landfill." (DE 43, Response at 13.) If there were still any doubt, Waste Services explicitly stated that the "2020 SWMP Amendment constituted a total regulatory taking of the property on which the Landfill sits because the action stripped the Landfill property of millions of dollars in value, leaving it, for purposes of this analysis, worthless." (DE 43, Response at 14.)

In its motion to reconsider, Waste Services continues to maintain that the 2020 SWMP Amendment "rendered its landfill site worthless." (DE 53, Reply at 8; DE 49, Motion at 6-7.) It explicitly refutes that the Amended SWMP "resulted in only a diminution in value" of the landfill site. (DE 53, Reply at 8.) It argues that it meets the *Lucas* standard for a "total regulatory taking" claim (DE 53, Reply at 9) and that the 102.8-acre tract "has no beneficial or productive use other than as a landfill." (DE 53, Reply at 11.) In neither its complaint, nor in any pleading,

including this motion to reconsider, has Waste Services ever asserted that the 2020 SWMP Amendment effected a partial regulatory taking of the 102.8-acre tract under the *Penn Central* factors. It has never applied those factors to the 102.8-acre tract at all.

The Court found in the March 31, 2023 opinion that Waste Services had not alleged a total regulatory taking of the 102.8-acre tract because, even after the 2020 SWMP Amendment, Waste Services continued to operate a landfill on the tract until October 31, 2021 pursuant to the initial permit. Thus, the amendment did not cause the property to be economically idle. This finding, however, is contrary to the assumption that the Court must make on this motion to dismiss that Waste Services had the right to operate a landfill on the 102.8-acre tract that was included in the title to the land. The Court must assume for now that Waste Services has such a right because the Defendants have not yet identified "background principles of nuisance and property law" that prohibit Waste Services from operating a landfill on the 102.8 acres beyond the capacity allowed under the initial permit. *Andrews*, 11 F.4th at 471 (quoting *Lucas*, 505 U.S. at 1031). If the Court assumes that the right to operate a landfill on the property is included in the title to the 102.8-acre tract, Waste Services correctly argues in its motion to reconsider that the Court must also assume at this motion-to-dismiss stage that its right to use the 102.8-acre tract as a landfill "existed in perpetuity so long as it owned the property because the interests were not excluded from its title." (DE 53, Reply at 9.)

The Court found in the March 31, 2023 opinion, however, that, even if Waste Services' title included the right to operate a landfill on the 102.8-acre tract, Waste Services had alleged it could do so for only 8 to 20 months beyond the time allowed under the initial permit even if it had been granted a permit to expand on that tract. In its motion to reconsider, Waste Services argues that this finding was in error. The Court's finding on this issue was based on the allegations in Waste Services' complaint. In the complaint, Waste Services described only two

applications it made to expand the landfill capacity on the 102.8-acre tract. One of those applications "would provide [Waste Services] with 8-10 months of additional airspace to dispose of municipal solid waste . . . ." (DE 1, Complaint, ¶ 86.)  The second application "would provide [Waste Services] with 16-20 months of additional airspace to dispose of municipal solid waste." (DE 1, Complaint,  ¶ 87.)  These are the only two proposed expansions on the original landfill tract alleged in the complaint.

Moreover, in response to the motion to dismiss, Waste Services appeared to assert that it needed the 500-acre tract to expand to the full 9.67 million tons of capacity. Waste Services asserted that it spent "extensive sums to acquire adjoining properties to accommodate the additional capacity" of 9.67 million tons of waste. (DE 43, Response at 24) (emphasis added). Further, the documents attached to Waste Services' complaint, in which Waste Services' representatives described the proposed expansion to county authorities, detailed an expansion that would require the 500-acre tract. (DE 1-5, Smith Aff., Ex. A.) Thus, the Court inferred that Waste Services could expand the landfill operations on the 102.8-acre tract for only 20 months maximum and that any further expansion required the 500-acre tract.

Nevertheless, the complaint does not explicitly state that Waste Services could not have expanded the landfill capacity on the 102.8-acre tract for more than 20 months after the capacity was reached under the initial permit. In its motion to reconsider, Waste Services explicitly states that it could operate a landfill on the 102.8-acre tract to, "at minimum, a capacity of 9.67 million tons. (DE 53, Reply at 4.) Thus, the Court will view the complaint to allege that Waste Services could have expanded the landfill capacity on the 102.8-acre tract to at least the full 9.67 million tons permitted prior to the 2020 SWMP Amendment.

If Waste Services could expand the landfill on the 102.8-acre tract and the title to the property gave Waste Services that right, then Waste Services has sufficiently alleged a taking of

11

that right, even if Waste Services was able to continue landfill operations for some amount of time before it had to permanently cease. Waste Services alleges that the 2020 SWMP Amendment caused it to cease landfill operations after it reached the capacity allowed under the initial permit. It further alleges that, now that the landfill operation has ceased on the 102.8-acre tract, the property is worthless. It will eventually have to prove that, but this at least sufficiently states a claim that the 2020 SWMP Amendment effected a total taking of Waste Services' right to use the 102.8-acre tract as a landfill, even if the taking did not occur until after the landfill reached the capacity allowed under the initial permit.

In the March 31, 2023 opinion, the Court also found that if, as Waste Services alleges, the 102.8-acre tract became completely worthless when landfill operations ceased on it, then the tract was bound to become worthless because the landfill operations could not continue forever. Thus, the Court found, the 2020 SWMP Amendment could not be viewed as the cause of the land's decrease in value because that decrease would happen even without the 2020 SWMP Amendment. The Court made this finding under the assumption that Waste Services could operate a landfill on the 102.8-acre tract for 20 months maximum after reaching the capacity under the initial permit. Assuming, however, that Waste Services had the right and ability to operate a landfill on the 102.8-acre tract for at least decades and that the 2020 SWMP Amendment prohibited it from doing so, there is an issue as to whether the 2020 SWMP Amendment could be viewed as the cause of any damages permitted under a takings claim. That issue will benefit from additional briefing.

The Defendants argued in their motion to dismiss that Waste Services could not allege that it was the 2020 SWMP Amendment that caused it to cease operating a landfill on the 102.8-acre tract. The Defendants pointed out that the Cabinet is the entity that issues permits for landfill operations. They argue that, even if the 2020 SWMP Amendment had never occurred,

the Cabinet could have used its discretion to deny Waste Services a permit to continue landfill operations on the tract after the initial permit expired. The Defendants argue that, in that case, the amendment could not be viewed as the cause of the taking of Waste Service's property interest. In response to the motion to reconsider, Defendants continue to assert that there is "no guarantee" that the Cabinet would have exercised its discretion to grant Waste Services the expansion permit even if the county had not amended the SWMP. The Court agrees that, at this point, whether the Cabinet would have exercised its discretion to grant Waste Services an expansion permit if the 2020 SWMP Amendment had never occurred is an unknown that will require some evidence to resolve. If the evidence shows, however, that the Cabinet would have granted the permit if the SWMP had never been amended, then that would indicate the 2020 SWMP Amendment did cause the permit denial. Thus, the Court cannot find as a matter of law that the 2020 SWMP Amendment did not cause the Cabinet to deny the permit.

Waste Services will eventually have to prove causation. It will also eventually have to prove that the 102.8-acre tract had no value after being used as a landfill except as the site of a continued landfill operation and that it was possible to expand landfill operations on the 102.8-acre tract but for the SWMP Amendment. The Defendants will likewise have an opportunity to prove that background principles of nuisance and property law would prohibit expansion of the landfill operations on the 102.8-acre tract and that the Cabinet would have denied Waste Services' permit application even without the 2020 SWMP Amendment. For now, however, the Court is limited to the allegations in the complaint, including the documents attached to it. Waste Services has at least sufficiently stated a total takings claim with regard to the landfill expansion on the 102.8-acre tract, and the Court erred in dismissing that claim.

As to the proper defendants to the claim, Waste Services alleges that the taking was effected by the 2020 SWMP Amendment. It further alleges that it was the Scott County Fiscal

Court that voted to approve the amendment. (DE 1, Complaint, ¶¶ 89, 91.) Local governing bodies can be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Likewise, the state takings claim may be brought against the county. *Kentucky State Park Comm'n v. Wilder*, 84 S.W.2d 38, 41 (1935); *Layman v. Beeler*, 67 S.W. 995, 996 (1902). Accordingly, the Court will deny the motion to dismiss the federal and state takings claim against the Scott County Fiscal Court.

Waste Services also asserts federal and state takings claims against Scott County Judge/Executive Joe Pat Covington in his individual capacity, alleging that he adopted the 2020 SWMP Amendment. As to the federal takings claim, in the Sixth Circuit, there is a "clear rule: qualified immunity bars individual liability for takings claims under 42 U.S.C. § 1983." *O'Connor v. Eubanks*, 83 F.4th 1018, 1022, n.2 (6th Cir. 2023) (citing *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 468 (6th Cir. 2023)). Accordingly, the federal takings claim must be dismissed against Covington in his individual capacity. As for whether the state takings claim may be asserted against an individual, it does not appear that Kentucky courts have addressed this issue. The Court will allow the parties to address this issue in later pleadings.

The only defenses asserted by the Defendants in their motion to dismiss as to the takings claim against Covington in his individual capacity were legislative immunity and qualified immunity. This Court must apply state substantive law when considering the state claims. Kentucky law does not extend absolute legislative immunity to municipal legislators. *See Godman v. City of Fort Wright*, 234 S.W.3d 362, 370 (Ky.Ct.App.2007); *McCarty v. Willett*, No. 2022-CA-1536-MR, 2023 WL 7931118, at *5 (Ky. Ct. App. Nov. 17, 2023); *Kelly v. City of Fort Thomas, Ky.*, No. CIV.A. 2:08-54-DCR, 2008 WL 2949761, at *4 (E.D. Ky. July 30, 2008).

14

County officials may be entitled to qualified immunity for state law claims based on their official actions under the factors outlined by the Kentucky Supreme Court in *Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001). Defendants do not, however, address those factors in their motion to dismiss. Accordingly, the state law takings claim against Judge/Executive Covington in his individual capacity will not be dismissed.

The takings claims against the Georgetown-Scott County Planning Commission and Joe Kane remain dismissed for the reasons stated in the March 31, 2023 opinion.

In its motion to reconsider, Waste Services asks the Court to reconsider its dismissal of the takings claims and "any derivative claims." It does not identify the derivate claims to which it refers. The Court declines to address this vague request.

Moreover, to the extent that Waste Services is referring to its conspiracy claim, the Court explained in the March 31, 2023 opinion that the plaintiff "must plead enough facts to support a reasonable inference that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Boxill v O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (quotations and citation omitted). "[C]onspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (citations omitted). Waste Services has not pleaded sufficient facts to support a reasonable inference that Judge/Executive Covington and the Scott County Fiscal Court had a single plan to take Waste Services' property without just compensation. Waste Services does not allege that Judge/Executive Covington had any communications with the fiscal court about the landfill expansion at all prior to the vote adopting the 2020 SWMP Amendment.

Moreover, a claim alleging a conspiracy between the judge/executive and the county

15

fiscal court is barred by the intracorporate conspiracy doctrine, pursuant to which if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019) (citation omitted). The judge/executive is a member of the Scott County Fiscal Court. Ky Const § 144; Ky. Rev. Stat. Ann. § 67.710. Accordingly, for these reasons, and those stated in the March 31, 2023 opinion, any claim of a conspiracy between Covington and the Scott County Fiscal Court remains dismissed.

### III.    The Court's findings on the Due Process Claim

As to the Court's finding that Waste Services has not alleged a property interest that is protected by the Due Process Clause, that finding was based on two grounds.

First, Waste Services did not argue in its response to the motion to dismiss that it has a property interest that was protected by the Due Process Clause. It did not even address the issue. It addressed whether it had a property interest only for purposes of its takings claim and cited case law relevant to only a takings claim. (DE 43, Response at 10-13.)

As the Court explained in its March 31, 2023 opinion, the property interest analysis is not the same for due process and takings claims. *See Andrews*, 11 F. 4th at 469.  The Sixth Circuit has pointed out that a plaintiff may have a valid claim under the Takings Clause even though that plaintiff's due process claim fails for lack of a protected property interest. *Id*. (citing *Loreto Development Co. v. Village of Chardon*, 149 F. 3d 1183, 1998 WL 320981, at *3-4 (6th Cir. 1998)). In its motion to reconsider, Waste Services continues to confuse the two standards, arguing it has a property right for due process purposes under *Lucas* and *Res. Invs., Inc. v. United States*, 85 Fed. Cl. 447, 479 (Fed. Cl. 2009). (DE 49, Motion at 8.)  Both of those cases address property interests for takings claims.

Waste Services' failure to argue in its response to the motion to dismiss that it has a

property interest that is protected by the Due Process Clause is sufficient reason alone for the

Court's finding in the March 31, 2023 opinion that Waste Services' due process claim fails. It is

also sufficient reason to deny Waste Services' motion asking the Court to reconsider that

finding. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007)

("[U]nder Rule 59(e), parties cannot use a motion for reconsideration to raise new legal

arguments that could have been raised before a judgment was issued.").

The second reason the Court found that that Waste Services failed to allege a property interest

protected by the Due Process Clause was that Waste Services had pointed to no statute, policy, law, or

mutually explicit understanding that awarded it the right expand the capacity of the landfill. *Med*

*Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir.2002).  "Property interests protected by the

due process clause must be more than abstract desires or attractions to a benefit. The due process clause

only protects those interests to which one has a legitimate claim of entitlement." *Waeschle v. Dragovic*,

576 F.3d 539, 544–45 (6th Cir.2009) (citation omitted).

For the March 31, 2023 opinion, the Court assumed that the property interest that Waste

Services asserted for its due process claim was a right to expand the landfill. In its motion to reconsider,

Waste Services confirms that this is the property interest it asserts, arguing that it has "a valid

property interest in using the land as a landfill." (DE 49, Motion at 8.) In its reply brief in

support of the motion to reconsider, Waste Services asserts "the right to use [its land] as a

landfill, the right to expand the landfill during said use, and the right to possess real property

capable of being operated as a landfill." (DE 53, Reply at 12-13.) It asserts a property interest in

"owning land capable of being operated as a landfill." (DE 53, Reply at 13.)

Waste Services does not allege that any party interfered with its right to operate the

landfill on the 102.8-acre tract under the initial permit.  Waste Services operated a landfill on the

102.8-acre tract to the capacity allowed under that permit. As discussed, Waste Services cannot

17

claim an entitlement to operate a landfill on the 500-acre tract because that tract is zoned agriculture and was when Waste Services purchased it. Thus, it is not the right to operate a landfill that Waste Services alleges it was denied, but the right to operate a landfill on the 102.8-acre tract beyond the capacity allowed under the initial permit.

While the so-called "discretionary benefit" theory is not relevant in determining whether a plaintiff has a property interest protected under the Takings Clause, it is relevant in determining whether the asserted property interest is protected under the Due Process Clause. *Andrews*, 11 F4th at 468-70. Under that theory, a plaintiff cannot have a property interest in a right that is granted by the state if "the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp.*, 296 F.3d at 409.

As the Court explained in its March 31, 2023 opinion, the right to expand landfill capacity is a right granted by the state. Ky. Rev. Stat. §§ 224.40-305, 224.40-310; 224-315. To establish an entitlement to expansion on the 102.8-acre tract protected by the Due Process Clause, it is Waste Services' burden on this due process claim to point to "some policy, law, or mutually explicit understanding" that limits the state's discretion in awarding that benefit. *Med. Corp*, 296 F.3d at 410.

In neither its complaint nor its response to the motion to dismiss did Waste Services point to any limit on the state's discretion in awarding it the right to expand the landfill. Thus, the Court found in the March 31, 2023 opinion that Waste Services had not alleged a "genuine claim of entitlement" to expanding the landfill that is constitutionally protected by the Due Process Clause.

In its motion to reconsider, Waste Services still does not point to any limit on the state's discretion in deciding whether to issue a permit for expanded capacity. Instead, it argues that the state's discretion in awarding it an expansion permit is irrelevant because it has asserted a claim

against only the county. Before determining whether the county deprived Waste Services of procedural due process, however, the Court first must determine whether Waste Services has a property interest that is protected by the Due Process Clause. The right that Waste Services asserts was protected under the Due Process Clause is the right to expand the landfill on the 102.8-acre tract. That right is granted by the state.

In neither its response to the motion to dismiss nor in its motion to reconsider did Waste Services point to any limit on the state's discretion in awarding it a permit to expand the landfill. It is not until Waste Services' reply brief on the motion to reconsider that Waste Services points to any statutes that it argues requires the state to issue it an expansion permit. It is simply too late for Waste Services to make these arguments now.

Moreover, neither of the statutes cited by Waste Services indicates that the state was required to issue it an expansion permit if the proposed expansion was consistent with the county SWMP. One statute cited by Waste Services provides a reason the Cabinet can deny a permit. Ky. Rev. Stat. § 224.40-325 (applicant's failure to demonstrate financial responsibility). But the statute does not state this is the only grounds on which the Cabinet can deny an application. Indeed, the other statute cited by Waste Services sets out multiple requirements for the Cabinet to consider in determining whether to grant or deny a permit. Ky. Rev. Stat. § 224.40-315. It provides that the Cabinet cannot issue a permit if the applicant does not meet those requirements, but it does not provide that the Cabinet must issue a permit if the applicant does. Consistency with the county SWMP is not necessarily dispositive. The statute provides that the Cabinet can issue the permit even if the local governing body has determined that the application is inconsistent with the local SWMP. Ky. Rev. Stat. § 224.40-315(3). "The Cabinet is free to accept or reject the local planning agency's determination." *E. Kentucky Res. v. Fiscal Ct. of Magoffin Cnty., Ky.*, 127 F.3d 532, 536 (6th Cir. 1997)

In its motion to reconsider, Waste Services also points to two agreements it has called the Landfill Agreements, apparently arguing that they grant it a right to expand the landfill by prohibiting the county from amending the SWMP. (DE 49, Motion at 10.) Waste Services attached the Landfill Agreements to its complaint. None grants Waste Services a right to expand the landfill that is protected under the Due Process Clause for several reasons.

First, as the Court explained in the March 31, 2023 opinion, nothing in the agreements prohibited the county from amending the SWMP. In response to the motion to dismiss, Waste Services abandoned its claim that Waste Services had breached any particular obligations contained in the Landfill Agreements. Waste Services has never pointed to any provision of the agreements that either explicitly or implicitly granted it the right to expand the landfill. Second, the county could not grant Waste Services a right to expand the landfill because that right can ultimately be granted only by the state. Third, even if the agreements granted Waste Services an expansion right, Waste Services' remedy is not a due process claim, but a breach of contract claim. "Because a due-process claim is predicated on the deprivation of a constitutionally protected interest *without due process of law*, the availability of a state breach-of-contract remedy defeats the due-process claim." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017) "[I]t is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268, 1273 (6th Cir. 1988) (citations omitted).

In its motion to reconsider, Waste Services argues that the Court should not analyze the state's discretion in issuing an expansion permit because "this case is not about the Cabinet's denial of a permit." (DE 49, Motion to Reconsider at 9.)  Waste Services argues that the "relevant issue" for its due process claim is whether the Defendants had the discretion to

20

"remove Waste Services' ability to operate the landfill on the original tract." (DE 49, Motion at 7.)

Perhaps then the property interest that Waste Services intends to assert is not a property interest in operating the landfill beyond the capacity allowed under the initial permit but a property interest in the county SWMP that contained the expanded capacity – the SWMP as it existed prior to the 2020 amendment. This property interest would make more sense for Waste Services' due process claim against the county because the county is the entity that creates and amends the SWMP while the state is the only entity that grants an expansion permit. A due process claim based on a property interest in the SWMP with the expanded capacity nonetheless fails because, as discussed, Waste Services points to nothing that limited the county's discretion to amend the SWMP.

For these reasons and those stated in the Court's March 31, 2023 opinion, the Court continues to find that Waste Services' due process claim must be dismissed.

**IV.     Conclusion**

Accordingly, the Court hereby ORDERS that Waste Services' motion (DE 49) asking the Court to alter or amend its March 31, 2023 opinion and judgment is GRANTED in part and DENIED in part.

1) The motion is GRANTED as follows: The March 31, 2023 opinion is amended to provide that the motion to dismiss (DE 40) is DENIED as to the federal and state takings claims against the Scott County Fiscal Court and as to the state takings claim against Judge/Executive Covington in his individual capacity;

2) The motion to alter or amend the March 31, 2023 opinion and judgment is OTHERWISE DENIED; and

3) As a result of this opinion, the remaining claims in this action are the federal and state takings claims against the Scott County Fiscal Court and the state takings claim against Judge/Executive Covington in his individual capacity.

This 28th day of February, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY